## GILLISON DISCOUNT BUILDING MATERIALS, Inc. AND E. C. BARTON & COMPANY, d/b/a LAKE VILLAGE LUMBER CO. v. Allen G. TALBOT AND Catherine TALBOT

5-6081                                           488 S.W. 2d 317

### Opinion delivered December 18, 1972

*David F. Gillison Jr.,* for appellants.

*W. H. Drew,* for appellees.

Frank Holt, Justice. This is an action to foreclose appellants' asserted materialmen's liens against the residence owned by appellee Allen G. Talbot. Appellee Catherine Talbot is his wife. Both appellants alleged they sold building materials to a man named Scarborough

and the materials were delivered and used in the remodeling and repair of Talbot's house which was occupied by the appellees. Upon completion of appellants' evidence, the appellees filed a written demurrer to appellants' evidence (Ark. Stat. Ann. § 27-1729 [1962 Repl.]) which was sustained by the chancellor. On appeal it is appellants' contention for reversal that they established a prima facie case as to their asserted materialmen's liens and, therefore, the chancellor erred in sustaining appellees' demurrer to the evidence. The appellees strenuously respond that "[T]he entire record in this cause is void of any evidence of any contract with the owner of the property on which the lien is asserted." Also, "[A]t best, the appellants attempted to show an inference that Scarborough may have been a contractor by the mere fact that he was working on the Talbot residence." We are of the view the appellants are correct.

Evidence was adduced that the appellant Gillison Discount, during the months of July, August and September of 1970, sold to Bill Scarborough certain building materials which were delivered to and used in the Talbot house. Tickets were marked "Talbot job." Scarborough said he would pay for the material when Talbot paid him. Scarborough wrote "Talbot job" on purchase tickets. Some of the material was picked up by Scarborough and his employees. Invoices totaling $1,038.71 identifying the materials allegedly delivered and used in the Talbot job were introduced into evidence. One of appellant's employees, who delivered material to the house on several occasions, observed the remodeling and testified of Scarborough's presence during some of the deliveries. An electrician bought supplies from appellant Gillison and charged them to Scarborough, as directed by him, and installed the material in the Talbot home. He observed Scarborough working at the Talbot residence during the "remodeling job." According to one of Scarborough's own employees, who assisted in remodeling the Talbot house, Scarborough had no other job in progress at that time and all building materials delivered by Gillison Discount were used in the Talbot home. He observed both of the Talbots at the residence during the remodeling.

The manager of appellant Lake Village Lumber Co. testified that Scarborough "said he had the job" of remodeling Talbot's house, that materials were sold to Scarborough during July and August and were designated for use in the Talbot residence. He, also, observed construction work on the Talbot house. The amount of this appellant's asserted lien is $149.56 for materials furnished at Scarborough's direction. A plumber testified that he acquired materials for the house from both appellants at Scarborough's direction and installed the materials in the Talbot residence.

We agree with appellees that the record is void of any proof of a contract between appellants, as materialmen, and Talbot, as owner of the residence. However, Ark. Stat. Ann. § 51-601 (1971 Repl.) provides:

"Every **** person who shall **** furnish any material **** for any building, **** or for repairing same, under or by virtue of any contract with the owner **** or his agent, trustee, contractor or subcontractor, upon complying with the provisions of this act **** shall have for his **** materials **** furnished a lien upon such building ****."

Thus a lien can be created if a contract is shown to exist between a materialman and a contractor representing the owner. The necessary contract can be by express agreement or implied from the circumstances or conduct of the parties.

We consider our decision in *Werbe* v. *Holt,* 217 Ark. 198, 229 S.W.2d 225 (1950), controlling in the case at bar as to the written demurrer. There we held:

"By the overwhelming weight of authority it is the trial court's duty, in passing upon either a demurrer to the evidence or a motion for judgment in law cases tried without a jury, to give the evidence its strongest probative force in favor of the plaintiff and to rule against the plaintiff only if his evidence when so considered fails to make a prima facie case."

Further, the trial court's action in sustaining a demurrer to the evidence can be affirmed only if the plaintiff offered no substantial testimony upon the controlling question of fact. *Lafayette Co. Inc. Dev.* v. *1st Nat'l Bank,* 246 Ark. 109, 436 S.W.2d 814 (1969). There we recognized:

> "'The rule is that where fair-minded men might honestly differ as to the conclusion to be drawn from facts, whether controverted or uncontroverted, the question at issue should go to the jury.'"

In the case at bar the appellants presented undisputed evidence that they furnished material to Scarborough in the belief his status was that of a contractor; that the "Talbot job" was the only job being performed by him at that time; that Scarborough had some authority inasmuch as the materials, at his direction, were being delivered and used in remodeling Talbot's house; and, further, that Talbot himself and his wife were observed at the residence on occasions when material was delivered and being used in a substantial and visible remodeling (i.e., a room and bath and extending a room). After giving this evidence its strongest probative force and all reasonable inferences deducible therefrom most favorable to appellants, as we are required to do on a demurrer, we are of the view there is sufficient evidence of Scarborough's status as Talbot's contractor and of a contract between Scarborough and the materialmen, appellants, to establish a prima facie case as to the asserted materialmen's liens. Therefore, the written demurrer should have been overruled. A different "holding would be plainly contrary to the rule that on demurrer doubts are to be resolved in favor of the pleader, not against him." *Watkins* v. *Johnson,* 235 Ark. 85, 356 S.W.2d 655 (1962).

The decree is reversed and the cause remanded for proceedings not inconsistent with this opinion.

Reversed and remanded.

BROWN, FOGLEMAN and BYRD, JJ., dissent.

JOHN A. FOGLEMAN, Justice. dissenting. I cannot agree that appellants established a prima facie case for a materialman's lien, so I would affirm the trial court's action sustaining the demurrer to the evidence.

I do not find evidence showing that a contract existed between the "owner" and Scarborough, nor do I find a syllable to show that the materials furnished by either of the appellants were furnished for a building on the property described in the complaint, that the Talbot house was located on that property, that any material was delivered by either of the appellants to that property. or that any material furnished by appellants was used on that property. It is appropriate that all reasonable inferences deducible from the evidence be drawn in favor of appellant, but this does not permit the courts to find evidence of a fact in issue by surmise or guess or by the speculative process of drawing inferences from other inferences and indulging presumptions upon presumptions. To find evidence making a prima facie case for a materialman's lien here requires just such speculation and conjecture.

Appellants alleged that the materials were sold and delivered to Bill Scarborough and used in the repair and remodeling of a home owned and lived in by Allen G. Talbot and Catherine Talbot on the S½ of Lot 7 and N½ of Lot 8, in division of Block 1 of Snell's Addition to the Town of Lake Village, together with certain lands lying east thereof. This was the property upon which both appellants claimed a lien.

The Talbots denied all material allegations of the complaints of appellants against them. Thus, the burden of proving every allegation material to the establishment of the respective liens fell upon the respective lien claimants. *Fine* v. *Dyke Bros.*, 175 Ark. 672, 300 S.W. 375, 58 A.L.R. 907; *Royal Theater Co.* v. *Collins*, 102 Ark. 539, 144 S.W. 919. For the purposes of the motion made by appellees, it remained there. There is evidence that certain materials sold to Scarborough by Gillison were delivered to "A. G. Talbot house," for the remodeling

of the "A. G. Talbot residence," and that Mrs. Talbot came to Gillison Discount Building Materials and selected or ordered materials for "her house or the house she lived in". A co-manager of appellant Gillison testified that, when making deliveries to the "A. G. Talbot residence," he observed that an addition was being made to the house and that he saw Bill Scarborough and Howard Mims there. No one representing Gillison ever contacted Dr. Talbot, talked to him or sent him a statement for materials furnished by that appellant. The materials were billed to Bill Scarborough and the words "Talbot job" placed on the invoices whenever he directed that it be done. The testimony as to the claim of appellant Lake Village Lumber Company does not vary materially from that relating to the Gillison claim. J.W. Davidson did electrical work at the home of A.G. Talbot, installed the materials he purchased from Gillison in "Dr. Talbot's house" and saw Bill Scarborough working there and Howard Mims helping Scarborough. Davidson said that all the electrical materials he obtained from Gillison were used in the "A. G. Talbot residence." Davidson was employed by Scarborough, and did not talk with Dr. Talbot or observe him in the house while working there. Frank Speight was employed by Scarborough to do plumbing work and purchased supplies from Gillison and placed them in the "A. G. Talbot house" or "Dr. Talbot house." Speight did not ever talk to Dr. Talbot. Howard Mims occasionally saw both Dr. Talbot and Mrs. Talbot during the time (1½ months) that he was working at the "Dr. A. G. Talbot house" as an employee of Bill Scarborough.

From the evidence, I do not have the slightest idea where the A. G. Talbot house or residence is located, nor can I even surmise what, if anything, is located upon the S½ of Lot 7 and the N½ of Lot 8. As far as this record discloses, Dr. Talbot's office or clinic may be located on the property described in the complaints and against which the lien is asserted. I don't even know who owns the real property described in the complaint or the lot upon which the Talbot house is situated. Appellees state

in their brief that record title to the "property in question" is in Dr. A. G. Talbot.

Even if it could be implied that Bill Scarborough had a contract with someone to remodel or build an addition to the Talbot house, with whom was the contract —Dr. Talbot or Mrs. Talbot? No one ever asked either Dr. Talbot or Mrs. Talbot if there was a contract with Scarborough for work on the Talbot house. A contract with Mrs. Talbot for the work would not entitle appellants to a lien upon Dr. Talbot's property, unless it be shown that she was acting as his agent. *Morehart* v. *A. B. Beeler Lumber Co.*, 176 Ark. 818, 4 S.W. 2d 29.

Appellants had the burden of proving all material elements required for the establishment of their respective liens. Among the elements on which evidence was necessary to a prima facie case are the identity of the property to be impressed with the lien and the ownership. This required appellants to prove the fact of ownership and the extent of the interest of the party entering into the contract. *Williams* v. *Humphrey*, 97 Ark. 643, 134 S.W. 939; 57 C.J.S. 961, Mechanics' Lien § 308. Appellants also bore the burden of showing that the materials were furnished under an agreement with the owner or an agent or contractor authorized to act in the premises. *Arkansas Foundry Company* v. *Farrell*, 238 Ark. 757, 385 S.W. 2d 26; *Morehart* v. *A.B. Beeler Lumber Co.*, supra.

If Dr. Talbot is the owner of the property on which appellants seek to establish liens, then the record is devoid of any evidence of a contract with him and of any agency relationship under which Mrs. Talbot could bind him. Nor is there any evidence of a contract between Dr. Talbot and Scarborough. Appellants rely upon testimony that Scarborough stated to employees of both appellants that he had "the job." Even if this could be taken as testimony that Scarborough had a contract, it does not establish that the contract was with the owner of the property. Furthermore, the authority of Scarborough might have been shown by his testimony, but

it could not be proved by his declarations to others. *Daly* v. *Arkadelphia Milling Company,* 126 Ark. 405, 189 S.W. 1053.

The strongest indication of a contract with Dr. Talbot is that he was "occasionally" seen by Howard Mims during the time Mims was doing work for Scarborough at the Talbot house, along with the references of the witnesses to the Dr. A. G. Talbot house. Still, the only evidence of any selection of materials for which a lien was sought concerned those selected by Mrs. Talbot. There is no testimony that Dr. Talbot ever paid for any item that was purchased or selected by Mrs. Talbot or that he was ever billed for any of them. Under these circumstances I do not feel that there was any estoppel against Dr. Talbot, because there is nothing to show any knowledge by the husband of his wife's purchases on his account. Unless Mrs. Talbot is the owner of the property, there is no basis for a lien on whatever property the Talbot house is situated. *Morehart* v. *Beeler,* supra. There we said:

> * * * there was no contract between appellee and the owner of the lot, or her agent, for the purchase of said material, as provided by section 6906, C. & M. Digest. In order for a material furnisher or laborer to have a lien upon the property, it must be "under or by virtue of any contract with the owner or proprietor thereof, or his agent, etc." This is the plain language of the statute. It is admitted that appellee had no contract with appellant for the furnishing of this material. It is undisputed that the contract was with the husband of appellant, and it is nowhere shown that he was the agent of appellant, with authority to bind her in the purchase of this material. The fact that she saw the material on the lot and knew that her husband was building this house is not sufficient to imply a contract on her part to pay therefor, and there is no testimony in the record to show that she ever agreed to pay for it. There is no allegation in the complaint that

B.F. Morehart was the agent of appellant, and there was no proof sufficient to establish this agency.

In the case of Hoffman v. McFadden, 56 Ark 217, 19 S.W. 753, 35 Am. St. Rep. 101, this court decided the exact questions now under consideration against the contentions of appellee here. It was there held that, under the statute creating a lien for work done, or materials furnished in making improvements on real property, the lien exists only where the labor is performed or materials furnished under a contract, express or implied, with the owner of the land, or with his agent, trustee, contractor, or subcontractor. And that the husband has no power to make a contract to improve his wife's property so as to create a mechanic's lien thereon, unless he had the power and authority to contract for her as her agent; and it was further held that such authority cannot be implied because of the relation of husband and wife, or from the fact that he assumes to manage her real estate, nor could the agency be inferred because of her knowledge that he is causing improvements to be erected upon her property.

I would affirm the judgment.

I am authorized to state that Mr. Justice Byrd joins in this dissent.