Jerry Glen SEYLLER and Alma Katherine Seyller *v.*
PIERCE AND COMPANY, INC.

90-327                                          816 S.W.2d 577

Supreme Court of Arkansas
Opinion delivered September 23, 1991
[Rehearing denied October 28, 1991.]

*Friday, Eldredge & Clark*, by: *James C. Clark, Jr.* and *Tonia P. Jones*, for appellant.

*Green & Henry*, for appellee.

DONALD L. CORBIN, Justice. Appellants, Jerry Glen Seyller and Alma Katherine Seyller, appeal a judgment of the Arkansas County Chancery Court imposing a materialman's lien on their property in favor of appellee, Pierce and Company, Inc. We find no error in the trial court's judgment and affirm.

The facts giving rise to the lien in question began when appellant Jerry Seyller consulted his long-time friend Tom Hollman regarding the construction of a metal building for appellants' wholesale electric business, Seyller Electric, Inc. On June 26, 1989, appellant Jerry Seyller signed a contract for the commercial construction project he discussed with Mr. Hollman. Appellant Alma Seyller did not sign the contract. The contract was written on the letterhead of Ray & Ray Metal Buildings, Inc. (RRMB) and signed by Mr. Hollman as authorized agent of RRMB. RRMB is a corporation holding a valid contractor's license. Although RRMB was appellants' general contractor, it did not perform the actual construction for the Seyller Electric project; rather, another corporation, Steel Building Manufacturers, Inc. (SBM) performed the construction. SBM was not a licensed contractor.

Mickey Pierce, president of appellee Pierce and Company, contacted Mr. Hollman seeking to supply ready-mix concrete for the Seyller Electric project. In August and September of 1989, appellee executed two written agreements concerning the concrete for appellants' building. These agreements were addressed to Mr. Hollman at Ray & Ray Construction Company, Inc. (RRCC) and signed by Mr. Hollman as agent of RRCC. Mr. Hollman was employed as a salesman by both RRMB and RRCC. RRCC was not a licensed contractor.

The testimony of Larry Holleman, an accountant and former Secretary/Treasurer of SBM and RRMB, revealed that RRMB was a shell corporation formed for the purpose of obtaining a valid contractor's license. Mr. Holleman explained that RRCC, along with several other corporations, was merged into a separate corporation, SBM, in January 1985. SBM continued to do business as RRCC. When SBM was unable to obtain a contractor's license, RRMB was formed and incorporated on June 9, 1986. RRMB obtained a contractor's license and, as Mr. Holleman testified was the standard operating procedure of the companies, served only as a general contractor to enter contracts with property owners. SBM would then perform the actual construction and arrange any necessary subcontracting. When RRMB received payment for the construction, it would in turn make payment to SBM. Mr. Holleman testified that the foregoing standard procedure was followed on the Seyller Electric project.

Appellee had not received payment for the concrete it supplied to SBM d/b/a RRCC when construction on the Seyller Electric project was halted before completion. Appellee thus filed suit to establish a lien on appellants' property pursuant to Ark. Code Ann. § 18-44-101 (1987). The trial court ruled in appellee's favor establishing a lien on appellants' property for $29,858.30, the amount of the concrete supplied to SBM d/b/a RRCC for appellants' construction project. The judgment ordered a sale of appellants' property with proceeds applied to the $29,858.30 owed appellee. Appellants appeal claiming appellee did not strictly comply with the requirements of our materialmen's lien statute. Alternatively, appellants claim the lien is unenforceable against appellant Alma Seyller's interest in the property. We find no merit to appellants' claims.

As their first argument on appeal, appellants assert the trial court erred in finding the necessary contract required by our materialmen's lien statute, section 18-44-101. The statute reads in pertinent part:

> (a)   Every mechanic, builder, artisan, workman, laborer, or other person who shall . . . furnish any material, . . . for any building, . . . upon land, . . . under or by virtue of any contract with the owner or proprietor thereof or his agent, trustee, contractor, or subcontractor, upon complying with the provisions of this subchapter, shall have, for his . . . materials, . . . furnished, a lien upon the building, . . . and upon the land belonging to the owner . . . .

Pursuant to this statute, the trial court found there was an enforceable contract between appellee and RRMB, appellants' general contractor, sufficient to support a materialmans' lien. Appellants claim that section 18-44-101 requires appellee, as a potential lien claimant, to have a contract with either themselves, as property owners, or with another party who has a contract with them. Appellants argue appellee did not meet this requirement because appellee's contract was with SBM d/b/a RRCC; appellants did not have a contract with SBM d/b/a RRCC as their contract was with the separate entity, RRMB.

Appellants are correct in stating the statute requires appellee to have either a contract with them or with someone with whom they have contracted. Appellants are incorrect, however, in asserting that no such contract exists.

The requirement of the statute has been met and the trial court was correct in so holding, for the statute clearly provides that "a lien can be created if a contract is shown to exist between a materialman and a contractor representing the owner. The necessary contract can be by express agreement or implied from the circumstances or conduct of the parties." *Gillison Discount Bldg. Materials, Inc.* v. *Talbot*, 253 Ark. 696, 698, 488 S.W.2d 317, 319 (1972).

The necessary contract between appellee and appellants' contractor, RRMB is found through the principles of agency and an implied agreement. Larry Holleman's testimony,

as related at the beginning of this opinion, revealed that the common practice of RRMB was to assign all its contracting authority to SBM. SBM would then perform the construction contracts and arrange any necessary subcontracts. Mr. Holleman testified this was the standard procedure of the two companies and that it was followed in the Seyller Electric project. From these facts, we conclude SBM d/b/a RRCC was an agent of RRMB. *See Evans* v. *White*, 284 Ark. 376, 682 S.W.2d 733 (1985). Thus, as section 18-44-101 requires, and in the language of *Gillison, supra,* a contract "exist[s] between a materialman [appellee] and a contractor representing the owner [SBM d/b/a RRCC]." *Gillison,* 253 Ark. at 698, 488 S.W.2d at 319.

Appellants claim the trial court, in effect, "pierced the corporate veil" to find the necessary contract existed, and that to do so was error in this particular case. We cannot agree with this contention. The trial court's judgment is silent with respect to piercing any corporation's veil and it is not necessary to do so to find a contract between appellee and RRMB. Appellee had a contract with SBM d/b/a RRCC, who was an agent of appellants' contractor, RRMB.

As their second claim on appeal, appellants argue appellee did not comply with the notice provisions of the materialmen's lien statute. Specifically, appellants claim they should have received pre-construction notice of any potential liens as required by Ark. Code Ann. § 18-44-115 (1987). It is undisputed that appellants did not receive the requisite notice. Appellee responds with the argument that appellants were not entitled to the pre-construction notice because the construction involved was "commercial construction" which is excepted from the notice requirement by section 18-44-115(f). Because we have recently held the commercial construction exception to the notice requirement unconstitutional on equal protection and due process grounds, *Urrey Ceramic Tile Co.* v. *Mosley*, 304 Ark. 711, 805 S.W.2d 54 (1991), we must make a threshold choice of law determination regarding which law applies to the current case. In other words, we must first decide whether to apply *Urrey* retroactively to this case which was pending before us when *Urrey* was decided.

We have stated that once a statute is declared unconstitutional, it is treated as if it had never been passed. *Bob Hankins*

*Distrib. Co.* v. *May*, 305 Ark. 56, 805 S.W.2d 625 (1991); *Huffman* v. *Dawkins*, 273 Ark. 520, 622 S.W.2d 159 (1981). However, in this particular case, to treat the statute as if it had never been passed would require us to ignore the well-settled rule that even constitutional arguments are waived on appeal unless raised below. *Smith* v. *City of Little Rock*, 305 Ark. 505, 806 S.W.2d 371 (1991). Thus, before addressing the merits of appellants' second argument, we must make a choice of law. In other words, we must decide if *Urrey* is applicable to the present case such that section 18-44-115(f) is considered never to have existed; or, if because appellants failed to preserve the constitutional argument for appellate review, is *Urrey* not applicable to the present case such that sections 18-44-115(f) is considered to exist in this case.

In reaching our determination of the applicability of *Urrey* we consider the recent decision, *James B. Beam Distilling Co.* v. *Georgia*, ___ U.S. ___, 111 S. Ct. 2439 (1991), where a plurality of the United States Supreme Court stated its position on the retroactive application of a decision to claims arising on facts antedating the decision. That position, as stated by Justice Souter who announced the judgment of the Court, is that once the Court has applied a rule of law to the litigants in one case, it must apply the same rule of law to all other litigants not barred by procedural requirements or *res judicata*. Thus, having no procedural bars, James B. Beam Distilling Company, as petitioner, received the benefit of a prior decision of the Court, *Bacchus Imports, Ltd.* v. *Dias*, 468 U.S. 263 (1984), although it did not begin to litigate its case until after the *Bacchus* decision was rendered.

It is important to note that petitioner James B. Beam Distilling Company was not barred by *res judicata*, a statute of limitations, or other procedural requirements from litigating its case. In that respect, the factual situation in *James Beam* differs from the factual situation in the current appeal. Here, appellants are barred by the procedural requirement of preserving an issue in the trial court for our review. It is true that in their answer appellants asserted the materialmen's lien statute violated the Fourteenth Amendment of the United States Constitution and Ark. Const. art. 2, § 3; however, something more than a mere assertion of an argument in the pleadings is required to preserve an issue for appellate review. In *Bond* v. *Dudley & Moore*, 244

Ark. 568, 426 S.W.2d 780 (1968), we held that a party's conduct at trial can have the effect of abandoning an issue raised in the pleadings so that it cannot be relied upon in this court. We have also held that we will not address a constitutional argument that was not called to the trial court's attention for a ruling on the constitutionality during trial or at some point prior to the entry of final judgment. *May v. Barg*, 276 Ark. 199, 633 S.W.2d 376 (1982); *Wilson* v. *Wilson*, 270 Ark. 485, 606 S.W.2d 56 (1980). In the current case, although appellants raised the constitutional question in the pleadings, and although they raised a question of insufficient notice in their proposed findings of fact and conclusions of law, they did not request or receive a ruling on the constitutional issue from the trial court, nor did they argue the issue before to the trial court. Thus, in accordance with *May, supra, Wilson, supra,* and *Bond, supra,* we find appellants did not properly raise the constitutional argument to the trial court and the argument is not subject to appellate review. Accordingly, we hold the *Urrey* decision is not applicable to this case.

Now we address the merits of appellants' second claim. The thrust of appellants' argument is that appellee, who is a licensed contractor, was not entitled to receive the benefit of the commercial construction exception because the actual construction was not "performed by" a licensed contractor. The commercial construction exception, section 18-44-115(f), reads as follows:

> The provisions of this section shall not be applicable to commercial and industrial construction performed by contractors licensed under § 17-22-101 et seq.

As was previously stated, it was SBM d/b/a RRCC that performed the construction of appellants' building. At all times relevant to this appeal, SBM was not a licensed contractor. Thus, argue appellants, since a licensed contractor did not perform the construction, this exception should not apply and appellee's lien should be held unenforceable for failure to give the requisite notice.

█ We have already determined that SBM d/b/a RRCC was RRMB's agent. RRMB, a licensed contractor, was appellants' general contractor which performed the construction by arranging the work and any necessary subcontracts. As the construction was performed by RRMB, a licensed contractor, the

commercial construction exception applies. Appellee's lien is therefore enforceable and does not fail for lack of notice to appellants.

■ Appellants' third argument on appeal is that appellee's lien should not attach to appellant Alma Seyller's interest in the property because she did not sign the contract with RRMB. Appellants own the property in question as tenants by the entirety. It is true that appellant Alma Seyller did not sign the contract, however, her actions during the construction indicate she was indeed a party to the contract, at least by implication. *Steed* v. *Busby*, 268 Ark. 1, 593 S.W.2d 34 (1980). She had knowledge of the contract and approved it by writing and signing three personal checks, which were drawn on appellants' joint account made payable to RRMB, for the progress payments. We reiterate the previously cited holding of *Gillison Discount Bldg. Materials* v. *Talbot*, 253 Ark. 696, 488 S.W.2d 317 (1972), that the contract giving rise to a materialman's lien can be either express or implied.

Affirmed.

HOLT, C.J., and BROWN, J., dissent.

ROBERT L. BROWN, Justice, dissenting. I would reverse.

By its decision today the majority disregards the law of corporations and the concept of distinct legal entities. The salient facts are undisputed:

1. The owner contracted with a corporation, Ray & Ray Metal Buildings, Inc. to do the work. The contract was signed on behalf of Ray & Ray Metal buildings by Tom Hollman as authorized agent. This corporation was duly licensed as a contractor in Arkansas.

2. A separate corporation, Steel Building Manufacturers, Inc., contracted with the supplier, Pierce and Company, for the materials in dispute. Tom Hollman signed on behalf of SBM as agent. SBM actually did the contracting work for the owner — not Ray & Ray Metal Buildings. SBM was *not* a licensed general contractor in Arkansas.

3. The owner was not notified by SBM that he would be liable for materialman's liens as required by Ark. Code Ann. § 18-44-

115 (1987). That notice would have identified a different corporation, SBM, as the actual contractor. As an unlicensed contractor, SBM was required to give the notice.

4. The owner paid Ray & Ray Metal Buildings one time for the materials. Based on the chancellor's decision, he will have to pay the supplier again.

In the face of these facts, the chancellor found:

> 5. Plaintiff, as subcontractor, contracted with Ray & Ray Metal Buildings, Inc. to deliver materials in the form of concrete for the construction of the building on the Seyller property.

In making this finding, the chancellor erred. A separate corporation, SBM, contracted with the subcontractor which was Pierce and Company — not Ray & Ray Metal Buildings. The majority engages in contorted reasoning when it holds that a common agent for the two corporations somehow causes a contract made by one corporation to bind the other. That simply is not the law, absent some intent and action by the second corporation to be so bound.

We take a radical step today when we say a common agent by one action binds two corporations, without any corporate suggestion that this was intended and when the owner was not so advised. The clear purpose of the notice statute is to let an owner know of liability for materials when unlicensed commercial contractors are doing the work. Also, an owner might well refuse to deal with a new contractor revealed in the notice which is different from the contractor retained to do the job. The statutory notice requirement should have been followed in this case, and it was not. I would relieve the owner of further liability.

HOLT, C.J., joins.