Waymond STEWART *v.* Linda WINFREY

91-126                                        824 S.W.2d 373

Supreme Court of Arkansas
Opinion delivered February 10, 1992

*McCullough Law Firm*, by: *R.S. McCullough*, for appellant.

*Charles Dirden*, for appellee.

DAVID NEWBERN, Justice. This is a paternity and child support case in which the appellant, Waymond Stewart, was found to be the natural father of Rokeshia Lafaye Winfrey and was required to pay $70 weekly child support. He argues: (1) there was insufficient evidence that he was the natural father of the child; (2) the separation of powers doctrine was violated in the adoption of the child support chart; (3) the child support chart discriminates against legitimate non-divorce children in contravention of the equal protection clause.

A blood test showing a 99.27 % probability that Stewart was the father, coupled with the mother's testimony that she and Stewart were living together during the probable period of conception, constitutes sufficient evidence of paternity. Stewart failed to present adequately the separation of powers issue to the Trial Court, and we will not consider it on appeal. Given the discretion chancellors may exercise in its application, the child support chart does not discriminate against legitimate non-divorce children. The judgment is affirmed.

Waymond Stewart and Linda Winfrey began seeing each other socially in late 1977 or early 1978, and they lived together from June until September of 1978. Both parties testified to having a sexual relationship when they lived together. Winfrey moved out of the apartment she shared with Stewart in September of 1978, and at that time she realized she was pregnant. Winfrey stated that Stewart was the only man she was sexually involved with for a month and a half before and after she became pregnant. The child, Rokeshia Lafaye Mosley, was born on May 22, 1979, approximately nine months from the time Stewart and Winfrey lived together.

Winfrey testified that when she realized she was pregnant, she told Stewart he was the child's father. In November of 1978, she began dating Herbert Winfrey, and they married two months after Rokeshia was born. In September, 1989, Herbert Winfrey's name was placed on the child's birth certificate as that of the natural father. Apparently, Rokeshia's name was changed from Mosley to Winfrey around the same time. Winfrey testified her husband's name was placed on the birth certificate because she believed it was necessary to keep her marriage together. Her husband wanted everyone in the house to be a Winfrey. Herbert

and Linda Winfrey lived together for eleven months and later divorced.

Stewart testified that at first Linda Winfrey told him he was Rokeshia's father. He stated she later told him he was not the father, and she refused to let him see the child at the hospital shortly after the birth. Joyce Perry, Stewart's niece, testified that Linda Winfrey also told her that Stewart was not the father. Winfrey admitted telling several people that Stewart was not Rokeshia's father. She stated she did so because Stewart refused to support the child.

Stewart works for Yellow Freight Systems, Inc., and earns $473.19 weekly net pay. At the time of suit, Stewart was married and had two other children. Linda Winfrey works for Arkansas Power and Light and earns $18,500 yearly gross salary. She receives no financial support from her ex-husband.

In March of 1990, Winfrey filed this paternity suit in Pulaski County Chancery Court claiming Stewart was the natural father of her child and that he should be required to pay child support. Stewart denied the allegations. Prior to trial, the parties agreed that a blood test would be administered and would be admissible as evidence of paternity. The agreement stated "if the probability of paternity, as reflected by the blood test, is 95% or higher, the Trial Court will rule that paternity is established and support will be set." The blood test, which was admitted as evidence, showed a 99.27% probability that Stewart was the father.

After the evidence was presented, Stewart argued the blood test could only be used as evidence of paternity and should not be dispositive of the case. He argued other evidence indicated he might not be the father. For example, Winfrey told others Stewart was not the father, and another man's name was placed on the birth certificate. The Chancellor held Winfrey was entitled to a presumption that Stewart was the father based on the blood test results, and Stewart failed to introduce sufficient evidence to rebut the presumption.

On the child support issue, Stewart argued the Chancellor should consider his other children in setting the amount of child support for Rokeshia. The child support chart specifically takes into account payments made under court order to support other

children and allows these payments to be deducted from weekly take home pay. *In re: Guidelines for Child Support Enforcement*, 301 Ark. 627, 784 S.W.2d 589 (1990). The chart does not refer to support of children not under court order.

Stewart's counsel first objected to applying the support chart at all because of an unconstitutional violation of separation of powers, giving neither reason nor citation of authority. He next stated the chart violated the equal protection clause because a child benefitted by being illegitimate, as opposed to being the child of a marriage. The Chancellor did not rule on these issues but stated "the child support chart does not make a provision for a reduction based on other children." The Chancellor awarded $70 weekly child support to Winfrey.

### 1. Sufficiency of the evidence

In a paternity proceeding brought against a living putative father, the mother's burden of proof is a mere preponderance of the evidence, as the proceeding is civil in nature. *McFaden v. Griffith*, 278 Ark. 460, 647 S.W.2d 432 (1983); *Ross v. Moore*, 25 Ark. App. 325, 758 S.W.2d 423 (1988). Furthermore, Ark. Code Ann. § 9-10-108(a)(4) (Supp. 1991) provides:

> If the results of the paternity tests establish a ninety-five percent (95%) or more probability of inclusion that the defendant is the natural father of the child and after corroborating testimony of the mother in regard to access during the probable period of conception, such shall constitute a prima facie case of establishment of paternity, and the burden of proof shall shift to the defendant to rebut such proof.

The blood tests showed a 99.27% probability that Stewart was the father, and he was living with Winfrey during the probable period of conception. Winfrey also stated she was not involved with anyone else at this time. This evidence gave her a statutory presumption of paternity. Winfrey explained that she told people Stewart was not the father because he refused to support the child, and she put Herbert Winfrey's name on the birth certificate because she wanted to stabilize her marriage. The Chancellor found insufficient evidence to rebut the presumption of paternity, and we cannot say this decision was clearly

erroneous. Ark. R. Civ. P. 52(a) (1991).

## 2. Separation of powers

Stewart argues that Act 948 of 1989, which established the child support guidelines, violates the separation of powers doctrine in Article 4, Section 2, of the Arkansas Constitution. Stewart's counsel cited no authority for this proposition in the Trial Court. Counsel did not address how the General Assembly might have improperly delegated legislative power to the judiciary and gave no arguments supporting his contention. He thus discusses this issue for the first time on appeal. There is nothing in the record to indicate the Chancellor ruled on the issue.

■ Failure to state the specific grounds of a motion or objection below waives that argument on appeal. A.R.E. 103(a)(1) (1991); *Mine Creek Contractors, Inc.* v. *Grandstaff*, 300 Ark. 516, 780 S.W.2d 543 (1989); *Bonds* v. *State*, 296 Ark. 1, 751 S.W.2d 339 (1988). Although the separation of powers issue was raised as a "standing objection," it was essentially a constitutional defense to paying a certain amount of child support. For this reason, the cases involving specific objections to evidence are not entirely on point.

■ We have held, however, that a trial court must be presented with a constitutional issue before we will consider it on appeal. *May* v. *Barg*, 276 Ark. 199, 633 S.W.2d 376 (1982); *Wilson* v. *Wilson*, 270 Ark. 485, 606 S.W.2d 56 (1980). A constitutional issue will not be addressed if it was not brought to the Trial Court's attention for a ruling during trial or at some point prior to the entry of final judgement. *Seyller* v. *Pierce & Co.*, 306 Ark. 474, 816 S.W.2d 577 (1991). Stewart did not sufficiently present the issue to the Trial Court for resolution, and we will not consider his argument on appeal. The fleeting reference to separation of powers without any citation of authority, argument, or even any reference to the basis for the reference was insufficient to present the issue to the Chancellor for ruling.

## 3. Equal protection

There is a rebuttable presumption that the amount specified in the child support chart is the appropriate amount of child support. This presumption is rebutted if a written finding is made

that the chart amount is unjust or inappropriate, as determined under criteria established in the chart. Ark. Code Ann. § 9-12-312(a)(2) (Supp. 1991). In *In re: Child Support Enforcement Guidelines*, *supra*, this Court set out the factors for determining whether an amount specified by the chart is unjust or inappropriate. These factors do not include payments made to support other children, although the list is not exclusive.

The chart also defines weekly take home pay as "income" as defined in the federal income tax laws, less proper deductions for:

1.  Federal and state income tax;

2.  Social security (FICA) or railroad retirement equivalent;

3.  Medical insurance; and

4.  Presently paid support for other dependents by Court order.

The failure to allow credit for support of children, usually non-divorce children, when such support is required and given, but not pursuant to a court order, is the basis of Stewart's equal protection claim.

█ █ We have recently held that the child support chart and the criteria used for deviating from it are not mandatory. There may be other matters in addition to the support chart that have a strong bearing upon determining the amount of support. The factors listed in the *per curiam* order are examples of these other matters. *Black* v. *Black*, 306 Ark. 209, 812 S.W.2d 387 (1991). The financial ability to pay child support could be one factor in determining whether a deviation from the chart is appropriate. Reference to the chart is mandatory, but applying the specific chart amounts is not mandatory if it would be unjust or inequitable, and if written findings are made to that effect.

The Court of Appeals has also recognized that a payor spouse's other children, even if not supported under a court order, may be considered in determining the financial ability to support another child. *Waldon* v. *Waldon*, 34 Ark. App. 118, 806 S.W.2d 387 (1991).

█ The Chancellor's decision in this case that other chil-

dren may not be considered under the support chart could have been error if taken to mean the Chancellor could not look beyond the chart to determine the appropriate support amount. Stewart, however, does not argue this aspect of the issue in his brief and only contends the chart violates the equal protection clause. After figuring the child support amount under the chart, a chancellor has the discretion to adjust the amount if equitable and if written findings are made to that effect. In making the decision, the chancellor can consider a parent's ability to pay. This would necessarily include a consideration of other children the parent is legally obligated to support. The family support chart thus poses no equal protection clause violation.

Affirmed.

CORBIN, J., dissents.

DONALD L. CORBIN, Justice, dissenting. I dissent only to the third issue as to whether the chancellor erred in not considering appellant's children by another marriage, not subject to the court ordered support, when utilizing the family support chart. It would seem that a failure by the court to consider the children of another marriage would certainly violate their right to equal protection under the law.