Cite as 2021 Ark. App. 360

# ARKANSAS COURT OF APPEALS
DIVISION IV

**No.** CV-19-583

|  |  |
|---|---|
| RANDALL FORD, INC. | |
| APPELLANT | **Opinion Delivered** September 29, 2021 |
| V. | |
| | APPEAL FROM THE SEBASTIAN COUNTY CIRCUIT COURT, FORT SMITH DISTRICT |
| LARRY RANDALL, JR., TRUSTEE OF THE LARRY RANDALL, JR., NON-EXEMPT TRUST; HARRIET ELIZABETH RANDALL, TRUSTEE OF THE HARRIET ELIZABETH RANDALL NON-EXEMPT TRUST; VIRGINIA RANDALL ADAMS, TRUSTEE OF THE VIRGINIA RANDALL ADAMS NON-EXEMPT TRUST; LEIGH RANDALL CRAWFORD, TRUSTEE OF THE LEIGH RANDALL CRAWFORD NON-EXEMPT TRUST; ANNE RANDALL DOUGLAS, TRUSTEE OF THE ANNE RANDALL DOUGLAS NON-EXEMPT TRUST | [NO. 66FCV-18-563] |
| | HONORABLE STEPHEN TABOR, JUDGE |
| APPELLEES | AFFIRMED |

## BRANDON J. HARRISON, Chief Judge

On 9 May 2019, the Sebastian County Circuit Court entered findings of fact and conclusions of law ruling that the appellant, Randall Ford, Inc. (RFI), breached a lease agreement when it stopped making rental payments for the showroom and other buildings that Clyde Randall and Larry Randall, Sr. (the Randall Brothers), built for the corporation in 1967. The circuit court determined that RFI owed back rent to the appellees, who were

Larry Sr.'s heirs, as well as future rent payments until the lease expired in 2027. RFI appeals the circuit court's order and raises four arguments for reversal. We affirm.

I. *Factual Background*

In 1966, a fire destroyed the building in Fort Smith where RFI's predecessor, Randall Motor Company (Randall Motors), was located. The Randall Brothers, who were the owners and only shareholders of Randall Motor Company, relocated the dealership to 8.2 acres of land that Randall Motors leased from the Holley Family. The lease agreement for the land, called the "ground lease," was executed on 28 March 1967. The initial term of the ground lease was for fifty years—from 1 January 1968 until 31 December 2017. The ground lease gave Randall Motors the option to extend the lease term "for an additional term not to exceed ten years," or until 31 December 2027.

Regarding improvements to the land, the ground lease stated that Randall Motors "shall have the right to construct such improvements as [it] may desire upon the leased premises," and that all such improvements "shall remain the property of [Randall Motors] during the term of the lease." The ground lease also provided, however, that upon its termination, any buildings or other improvements "shall become the absolute property of [the Holley Family]."

The Randall Brothers then arranged for the construction of a new showroom, service center, and other buildings at Randall Motors' new location. On 24 May 1967, the Randall Brothers, the Holley Family, and Randall Motors executed a mortgage in which the Holley land was pledged as security for a $330,000 loan from a savings and loan association to the Randall Brothers. As stated in the mortgage, the loan was "for the purpose of constructing

2

valuable improvements upon [the] mortgaged property" and that the ultimate benefits of the improvements to the Holley Family and Randall Motors "constitute[ed] valuable consideration to them for the execution of [the] mortgage."

A few days later, the Randall Brothers and Randall Motors executed a lease for the new buildings. That document we call the "building lease." According to the building lease, Randall Motors "desire[d] the construction, building, and erection of certain facilities for its automobile sales, service center and other related enterprises, with appurtenant parking," and the Randall Brothers correspondingly "desire[d] to construct, build, and erect" those improvements. So the Randall Brothers agreed to "demise and let" the facilities (once built) to Randall Motors in exchange for Randall Motors' promise to pay monthly rent. The initial twenty-year term of the lease began on 1 January 1968 and was due to expire on 31 December 1987. The building lease offered Randall Motors the option to extend the term of the lease for an additional twenty years, or until 31 December 2007, "by giving written notice to [the Randall Brothers] on or before July 1, 1987." During the term of the lease, "all buildings and improvements, fixtures and articles of personal property erected upon . . . the premises by the [Randall Brothers] shall remain the property of the [Randall Brothers]."

Twenty-four years later, on 25 October 1991, Randall Motors had become Randall Ford, Inc. (RFI), and Larry Randall, Sr., sold his shares of RFI back to the corporation and to Clyde's son, Brad Randall. The Randall Brothers and RFI also executed a document titled "Option to Lease" (option agreement) that, in a nutshell, granted RFI the option to extend the building lease beyond 31 December 2007. Specifically, the option agreement

3

referred to the building lease "presently in existence between [the Randall Brothers and RFI] . . . granting the lessee, its successors and assigns, the premises therein for a period of twenty years and the right to renew said lease for an additional period of ten years." The option agreement also gave RFI the opportunity "to renew said lease . . . for an additional period of twenty years with a further option to renew for a period of ten years." The option agreement was intended to make the building lease coterminous with the ground lease; it states that "it [was] the intention of the [Randall Brothers] to grant [RFI] a period of time identical to a ground lease between [RFI] and [the Holley Family] dated March 28, 1967."

On 27 December 2011, RFI sent a letter to the Holley Family notifying it of RFI's intent to exercise the ten-year option on the ground lease. Rather than terminating at the conclusion of its original term on 31 December 2017, the ground lease will now expire, in the absence of any further options, on 31 December 2027.

A few years later, on 15 September 2015, Brad Randall wrote a letter to the appellees in which he offered, on behalf of RFI, "an early payout of [their] interest under the [building lease]." According to the letter, the buyout was necessary to enable the financing of additional improvements. The letter explained that "the current dealership facility is in excess of 40 years old," and while "certain renovations have taken place over time," the "structure is [nonetheless] outdated and will be replaced to bring it up to the standards required by Ford." The letter also stated that "it will be much easier for [RFI] to construct the new facility if the obligations under the Agreement can be concluded."

Consequently, RFI proposed a buyout to the appellees. In doing so, the letter acknowledged that the building lease and the option agreement "contain, in principle, terms

4

identical to those in the ground lease agreement with the Holley Family[.]" The letter explained that "the term of the building lease remains in effect through the remainder of 2015, all of 2016, and all of 2017." RFI, however, offered to pay each appellant his or her share of the amount due under the building lease "for the remainder of 2015 and through May 2016." In return, RFI wanted the appellees "to forgive the amount due for the remainder of 2016 and all of 2017 and agree to convey any and all interest [they] may have in and to the [building lease] directly to [RFI]." The appellees declined the offer, and in December 2017, they received their last rent payments from RFI.

On 17 May 2018, the appellees filed a complaint alleging that RFI breached its obligation to pay rent under the building lease by "failing to pay rent . . . for the months of January through May 2018." The complaint further alleged that RFI has "continued to occupy the building notwithstanding [its'] failure to pay rent" and was liable to the appellees "in the amount of $35,692.50" in overdue rent as well as "rent that accrues subsequent to May 2018."

On 27 March 2019, the appellees filed an amended complaint that, among other things, increased the damages that they sought to $122,634. According to the amended complaint, RFI failed to pay rent "for the months of January through December 2018, and for the months of January through March 2019." The appellees also anticipated, when the amended complaint was filed, that RFI "will also refuse to pay rent for the month of April 2019."

RFI timely answered the amended complaint and claimed that the building lease and the option agreement were voidable because "Clyde and Larry Randall were fiduciaries of

RFI, and controlling parties thereof, and charged with a duty as [fiduciaries] not to benefit themselves at RFI's expense unless upon the agreement of disinterested officers," and neither the lease nor the option agreement had been so approved. RFI further claimed that the 1991 option agreement contained a mistake of fact (erroneously stating that the first option offered in the building lease was for ten years rather than twenty years); therefore, "there was no meeting of the minds with respect to the interpretation of the [appellees'] advance." RFI also argued that the option was ambiguous and "should be interpreted strictly in RFI's favor." Finally, RFI asserted that "there was no equivalent consideration extended for the $840,000.00 in benefits these particular Plaintiffs enjoyed for 2007–2017."

The circuit court held a bench trial in April 2019. After all the testimony, RFI moved to dismiss the complaint, arguing, as it did in its answer to the amended complaint, that the building lease and option agreement were voidable because they were not approved by disinterested officers and could not survive a "rigorous scrutiny test" for fairness to the corporation under *Hall v. Staha*, 314 Ark. 71, 79, 858 S.W.2d 672 (1993). RFI also contended that the 1991 option agreement was ambiguous because it erroneously set forth the length of the option that was offered in the building lease. RFI argued that the ambiguity should be resolved against the Randall Brothers as the (presumed) drafters of the option agreement, and the circuit court should determine that the building lease expired in 2017.

The circuit court denied the motion to dismiss and ordered the parties to submit proposed findings of fact and conclusions of law. In a brief supporting its proposed findings, RFI additionally argued that the building lease was not actually a lease at all, but a finance agreement that concluded in 2007 when the initial forty-year term of the building lease

(twenty years plus the twenty-year option) expired. RFI also suggested that, even if the building lease was, in fact, a "lease," it provided that the Randall Brothers would have ownership of the improvements only until 2007, whereupon title would revert to RFI under the terms of the ground lease with the Holley Family.

On 9 May 2019, the circuit court entered findings of fact and conclusions of law ruling in favor of the appellees. In addition to the facts set forth above, the circuit court found that "the decision to stop paying rent on the building to the [appellees] was made by Brad Randall" without review of the building lease or the option agreement. Indeed, the court found that none of the witnesses from RFI "had an explanation for RFI's position that the building lease expired in 2017." Each witness admitted, in fact, "that there was no way to construe the [building lease] itself to be a 50-year lease that would expire in 2017, and yet, "gave no credence at all to the [option agreement]." Relatedly, the circuit court found that while RFI stopped sending rent payments to the appellees in December 2017, it "continued to send one-half of the rent to Clyde's widow, Sharon Randall," and "took a business deduction" for those payments and "classified them on the books of RFI as rent."

In its conclusions of law, the court observed that the case "turn[ed] on the interpretation of the option [agreement]," and it found that it had "three operable provisions," including

> (1) a recital that the [building lease] had a primary term of 20 years with an option to extend of 10 years; (2) an option to extend the term of the building lease for 20 years and another option for an additional 10 years; and (3) an expressed intention to give RFI an extension of the [building lease] for a period of time identical to the [ground lease].

7

"Obviously," according to the circuit court, "the parties understood that the length of the [building lease] was less than the length of the [ground lease] and they wanted to grant RFI 'a period of time identical' to the [ground lease]." Considering that the ground lease could be (and was) extended to sixty years, as well as the "20+10+20+10" language in the option agreement, the circuit court concluded that "the most reasonable interpretation of the [option agreement] is that the term of the [building lease] extends the same number of years as [the ground lease]."

The circuit court also concluded that the option agreement survived "rigorous scrutiny" for fairness to the corporation. The court observed that

> [w]ithout the option, RFI would have to have vacated the dealership building after the initial 40 years of the [building lease], that is 12/21/2007. The remodeling that RFI did in 2000 would have been just 7 or 8 years old. It would definitely not have been advantageous for RFI to have vacated the building at that time, so the extensions set forth in the option (20 years and then 10 years) were of great value to RFI. It would make sense that Clyde and Larry Randall in 1991 were deriving much more income from the dealership than they were from renting the building to RFI. Accordingly, they would have had no incentive to engage in any self-dealing at the expense of RFI. It is also clear that the new owners of the company, Brad Randall and Bradford Randall, apparently recognized the value of RFI being located at 5500 Rogers Avenue because they did not move the dealership to a new location after December 2007 or December 2017.

The court also rejected RFI's related argument that the option agreement and the building lease were voidable due to the Randall Brothers' alleged conflict of interest, finding that the Business Corporation Act, *see* Ark. Code Ann. § 4-27-831 (Repl. 2016), which declares that interested transactions are voidable, was enacted after RFI had been incorporated. Even so, the court observed that "a corporate contract with directors is not void if the material

facts of the transaction and the director's interest were known to the shareholders or the transaction was fair to the corporation, both of which were true in this case."

As a result of these and other findings, the circuit court found that RFI was liable to the appellees for rent from January 2018 through April 2019 in the amount of $127,233.19, including prejudgment interest. The circuit court further found that RFI will owe future rent through 31 December 2027.

RFI raises four arguments for reversal of the circuit court's order. First, it suggests that the circuit court erred when it determined that RFI owed the appellees any rental payments after 2007. There was no consideration for those payments, RFI says, because the building lease provided that the Randall Brothers had title to the improvements only during the "term" of the lease. According to RFI, the term of the building lease was limited to forty years and expired in 2007.

Second, RFI argues that the circuit court erred when it ruled that RFI owed rental payments to the appellees after 2017. Specifically, RFI asserts that the expiration date of the building lease is ambiguous due to a mathematical error in the option agreement, and the circumstances surrounding the execution of the option agreement suggest that the parties intended for the building lease to expire in 2017.

Third, RFI contends that the building lease and option agreement should be declared void because there was no evidence that the building lease was approved by a disinterested corporate officer or shareholder or that it was fair to the corporation. RFI also asserts that the building lease and option agreement should be voided because they represent a theft of

9

a corporate opportunity from RFI; that is, to obtain a more favorable loan to finance its own construction of the improvements.

RFI's final point appears related to the first. RFI asserts that there was no consideration for rental payments after 2007 because the building lease and the option agreement were the components of a financing agreement that the parties intended to conclude in 2007—as opposed to an ongoing lease—that, according to the appellees and the circuit court, will expire contemporaneously with the ground lease in 2027.

## II. *Standard of Review*

The standard of review following a bench trial is whether the circuit court's findings are clearly erroneous or clearly against the preponderance of the evidence. *Jones v. John B. Dozier Land Tr.*, 2017 Ark. App. 23, at 6, 511 S.W.3d 869, 873. "A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made." *Id.* Moreover, "[d]isputed facts and determinations of the credibility of witnesses are within the province of the fact-finder." *Id.* Legal questions, on the other hand, are reviewed de novo. *Bud Anderson Heating & Cooling, Inc. v. Neil*, 2018 Ark. App. 183, at 6, 545 S.W.3d 819, 822–23.

## III. *Discussion*

### A. Lack of Consideration

RFI's first and last points similarly assert that the option agreement is unenforceable for lack of consideration. Therefore, we combine them here.

Again, RFI argues that the building lease limited the Randall Brothers' ownership of the improvements to the term of the building lease, which RFI says expired in 2007—at the conclusion of the initial twenty-year term and the first twenty-year option (provided in the building lease itself). The Randall Brothers did not own the improvements, in other words, after the expiration of the so-called "term" of the building lease. RFI also contends that the building lease was not actually a "lease" at all, but a financing arrangement that concluded in 2007 (when the initial twenty-year term and twenty-year option expired). For these reasons, RFI insists that it gained title to the improvements under the terms of the ground lease in 2007, and the Randall Brothers had no possessory interest to exchange for any rental payments beyond that date. We disagree.

An enforceable contract imposes mutual obligations on both of the parties to the contract. *Moorfield Constr. v. Hurst Concrete Constr., Inc.*, 2019 Ark. App. 594, at 7–8, 590 S.W.3d 210, 215. "The contract is based on the mutual promises made by the parties; and if the promise made by either does not by its terms fix a real liability on one party, then such promise does not form a consideration for the promise of the other party." *Id.* at 8, 590 S.W.3d at 215. "Mutuality of contract means that an obligation must rest on each party to do or permit to be done something in consideration of the act or promise of the other, that is, neither party is bound unless both are bound." *Id.*

The question whether the Randall Brothers had title to the improvements after 2007 cannot be answered without reference to the option agreement, as RFI apparently would have it. Indeed, "[w]hen a written contract refers to another instrument and makes the terms of that instrument a part of the contract, the two are construed together as the agreement

11

of the parties." *F&M Bldg. P'ship v. Farmers & Merchs. Bank*, 316 Ark. 60, 67, 871 S.W.2d 338, 342 (1994). "In order to incorporate a separate document by reference into a contract, the reference must be clear and unequivocal, and the terms of the incorporated document must be known or easily available to the contracting parties." *Ingersoll-Rand Co. v. El Dorado Chem. Co.*, 373 Ark. 226, 233, 283 S.W.3d 191, 196 (2008) (internal quotation marks omitted). "The document to be incorporated must be described in such terms that its identity may be ascertained beyond a reasonable doubt." *Id.* "Furthermore, it must be clear that the parties to the agreement had knowledge of and assented to the incorporated terms." *Id.*

> Here, the option agreement incorporates the building lease by reference, stating that
>
> specific reference is made to the lease presently in existence between [the Randall Brothers and RFI] and recorded on the 8th day of June 1967 on the books of Sebastian County in Volume 235 at page 534, granting the lessee, its successors and assigns, the premises therein mentioned for a period of twenty years and the right to renew said lease for an additional period of ten [sic] years.

The option agreement further references the building lease by providing that the Randall Brothers were granting the additional options "for and in consideration of the rents to be paid in accordance with the primary lease between the [Randall Brothers and RFI]." And RFI's continued rent payments after 2007, as well as its September 2015 "buy out" letter, establish that it knew of (and agreed to) the additional terms in the option agreement. That is why we construe the building lease and the option agreement together (as did the circuit court).

The two documents make it plain enough that the Randall Brothers had title to the improvements for the entire term of the building lease and that the "term" of the building

12

lease is longer than the original twenty-year term and twenty-year option that would have expired in 2007. The option agreement grants two additional options, and it expressly provides that it was the Randall Brothers' intention to "grant [RFI] a period of time identical to [the] ground lease between [RFI] and [the Holley Family] dated March 28, 1967." The option agreement provided, in other words, that the term of the building lease continued as long as RFI exercised its options to renew, and the ultimate intention was to ensure that the building lease and the ground lease (and the Randall Brothers' title to the improvements) would be coterminous with the ground lease (whereupon title to the improvements would revert to the Holley Family). As the circuit court found, rental payments after 2007 were evidence that RFI "obviously" extended the building lease by exercising the first (twenty-year) option offered in the option agreement.[1] Accordingly, the Randall Brothers could continue to "demise and let" the improvements in consideration of RFI's monthly rental payments.

The building lease and the option agreement also make it clear enough that they were the components of a lease agreement and not a financing arrangement, as RFI contends. The building lease calls the improvements "the leased premises." And the Randall Brothers agreed to "demise and let" the buildings in exchange for monthly rental payments. "Demise" means to "convey or grant [an estate] by will or by *lease*." *New Shorter Oxford English Dictionary on Historical Principles* (4th ed. 1993) (emphasis added). The recorded version of the building lease, moreover, is titled "lease agreement," and it eponymously refers to the primary document as a "lease agreement." Brad Randall's 15 September 2015

---

[1]RFI does not challenge this finding on appeal.

letter also demonstrates that RFI understood that the Randall Brothers "agreed to basically lease to Randall Motor Company the construction, building, and erections of the current facilities for the Randall Ford Dealership." Finally, the building lease granted the Randall Brothers rights typical of lessors, including the right to terminate the lease or relet the premises in the event of a default. RFI, moreover, was granted rights typical of lessees, including options to extend the lease or purchase the improvements outright as well as the right to sublet them. For these reasons, the circuit court did not clearly err when it determined that RFI owed rental payments after 2007.

## B. Ambiguity

RFI next argues that the circuit court erred when it interpreted the building lease to expire in 2027, when the extended sixty-year term of the ground lease is set to expire, rather than at the conclusion of the initial fifty-year term of the ground lease in 2017.[2] RFI suggests that the expiration date of the building lease is ambiguous because the option agreement erroneously states the length of the first option offered in the building lease. Consequently, the option agreement can be interpreted—according to one calculation—to implausibly

---

[2]RFI begins its argument here by repeating its assertion that the building lease expired in 2007; and it suggests that the discrepancy between the initial forty-year maximum term of the building lease and the longer initial term of the ground lease (fifty years) is an ambiguity that should be resolved against the Randall Brothers to a conclusion that the building lease ended in 2007. We cannot see any significant difference between this argument and the ones that we addressed in the previous point. As we discuss above, the building lease and the option agreement must be considered together, and those documents provide that the building lease will continue beyond 2007 (as RFI exercises its additional options) until the termination of the ground lease. Consequently, our discussion focuses on RFI's separate argument that the option agreement is ambiguous as to whether the building lease will expire in 2017, as RFI advocated below, or in 2027, as the circuit court ruled.

allow the building lease to extend to 2037—ten years beyond the expiration of the extended ground lease and contrary to the Randall Brothers' stated intention to "grant RFI a period of time *identical* to [the] ground lease." (Emphasis added.)

RFI further asserts that the circumstances surrounding the option agreement suggest that the parties intended the building lease to expire in 2017. RFI had not yet exercised its option to extend the ground lease when the option agreement was executed in 1991. It says, therefore, that the parties could have only intended that even with the additional options, the building lease would expire at the conclusion of the original fifty-year term of the ground lease in 2017.[3] We disagree.

"When a contract is unambiguous, its construction is a question of law for the court, and the intent of the parties is not relevant." *Blanchard v. City of Springdale ex rel. Water & Sewer Comm'n*, 2019 Ark. App. 522, at 16, 588 S.W.3d 807, 816. "The first rule of interpreting a contract is to give the language the meaning that the parties intended, and the court must consider the sense and meanings of the words used by the parties as they are taken and understood in the plain, ordinary meaning." *S. Constr., LLC v. Horton*, 2020 Ark. App. 361, at 14–15, 609 S.W.3d 16, 26. "It is also a well-settled rule in construing a contract

---

[3]RFI appears to make a related argument alleging that there was an absence of proof that it exercised the first twenty-year option in the building lease, and the lease, therefore, would have expired in 1987. RFI asserts, therefore, that the additional twenty-year and ten-year terms offered in the option agreement were intended to allow the building lease to be extended only until 2017. This argument conflicts with RFI's first point on appeal (which seems to *concede* that RFI exercised the first option to extend the building lease until 2007), as well as RFI's position at trial, where, as the circuit court found, Brad Randall testified that the option agreement "didn't extend anything." Consequently, we decline to address that argument here. *See Seyller v. Pierce & Co., Inc.*, 306 Ark. 474, 479–80, 816 S.W.2d 577, 581 (1991) (a party's conduct at trial can have the effect of abandoning an issue raised in the pleadings).

that the intention of the parties is to be gathered, not from particular words and phrases, but from the whole context of the agreement." *Id*. "It is the duty of the court to construe a contract according to its unambiguous language without enlarging or extending its terms." *Id*.

When the terms of a contract are ambiguous and susceptible to more than one meaning, however, the meaning of the contract becomes a question of fact. *Blanchard*, 2019 Ark. App. 522, at 16–17, 588 S.W.3d at 816. When an ambiguity exists in a contract, we are permitted to look outside the contract to determine the actual intent and conduct of the parties. *Id*. Indeed, when an ambiguity exists, extrinsic evidence may be admitted to prove an independent, collateral fact about which the contract is silent. *Id*. Extrinsic evidence may not be used, on the other hand, to alter, vary, or contradict the written contract. *Id*.

We do not see any ambiguity in the building lease. Having read the option agreement and the building lease together, as we must, the option agreement's reference to the building lease as granting "a right to renew [the building lease] for an additional period of ten years," is clearly a scrivener's error. The building lease plainly provides that the first option was actually for "an additional term of 20 years." We do not need to look to the surrounding circumstances, moreover, to determine the Randall Brothers' intention for offering the additional options. As indicated above, the option agreement expressly provides that they intended "to grant [RFI] a period of time identical to [the ground lease]." Although calculated under the mistaken belief that the first option offered in the building lease was only for ten years, the Randall Brothers' offer of two additional options, one for twenty years and one for ten years, is consistent with that intention. As written, the option

agreement would extend the building lease to sixty years (twenty plus ten plus twenty plus ten), which, including a ten-year option, was the probable term of the ground lease. The circuit court did not err when it ruled that RFI, which exercised the ten-year option in the ground lease and exercised the twenty-year option offered in the option agreement, was liable for rent payments under the building lease until 2027.

## C. Theft of Corporate Opportunity and Inherent Unfairness

RFI next argues that the 1991 option agreement was voidable because there was no evidence that it was "inherently fair" to RFI or that the Randall Brothers entered the agreement in good faith. RFI also suggests that the building lease was itself voidable because it was the product of a theft of a corporate opportunity. Specifically, RFI alleges that the Randall Brothers appropriated RFI's opportunity to obtain the loan to build the improvements on the Holley land. According to RFI, the loan would have had more favorable payment terms than the building lease and, rather than continuing until 2027, would have been fully paid in 1987. Because RFI's argument based on the corporate-opportunity doctrine is not preserved for our review, and RFI waived any unfairness or breach of fiduciary duty in the building lease and option agreement, we affirm.

It is well established that a party making an argument on appeal must obtain a ruling below to preserve it for our consideration. *See Pulaski Cnty. Special Sch. Dist. v. Delaney*, 2019 Ark. App. 210, at 10, 575 S.W.3d 420, 426. While RFI briefly raised the corporate-opportunity doctrine in its proposed findings of fact and conclusions of law, the circuit court did not address the doctrine in its final order entered on 9 May 2019. Accordingly, we decline to apply it here.

17

RFI also cannot prevail on its claim that the 1967 building lease or the 1991 option agreement were voidable due to any breach of fiduciary duty or inherent unfairness. We "may affirm a circuit court where it has reached the right decision, albeit for the wrong reason, so long as the issue was raised and the record was developed below." *Ark. State Bd. of Election Comm'rs v. Pulaski Cnty. Election Comm'n*, 2014 Ark. 236, at 12, 437 S.W.3d 80, 87. The appellees argued below that RFI "ratified the building lease contract long after [the Randall Brothers] were deceased by continuing to make monthly payments[.]" They were correct.

"A contract that is merely voidable is capable of being confirmed or ratified by the party having the right to avoid it, and such ratification may be express or implied." 17 C.J.S. *Contracts* § 12 (2021). Indeed, a party loses its right to avoid a contract for fraud, conflict of interest, or breach of fiduciary duty if, with full knowledge of the alleged wrongdoing, it "accepts the benefits flowing from [the contract] or remains silent or acquiesces in the contract for any considerable length of time after opportunity it afforded to annul or avoid it." *Gallon v. Lloyd-Thomas Co.*, 264 F.2d 821, 826 (8th Cir. 1959).

The evidence at trial demonstrated that RFI ratified the building lease and the option agreement and thereby waived the challenges that it makes here. Brad Randall became a shareholder in 1991 when Larry Randall, Sr., sold his stock contemporaneously with the execution of the option agreement. The evidence further demonstrated that RFI continued to use the improvements and pay monthly rent—including periodic increases based on the Consumer Price Index—to the Randall Brothers and their heirs for the next twenty-six years. Brad's 15 September 2015 letter, moreover, demonstrates that RFI knew all the

material circumstances surrounding the building lease and the option agreement and had acquiesced to their terms. Therefore, because RFI ratified the building lease and the option agreement, it cannot now assert that those documents were unfair or the products of any breach of fiduciary duty.

IV. *Conclusion*

The rental payments that RFI made after 2007 were supported by adequate consideration. The building lease incorporated the option agreement by reference; therefore, the Randall Brothers' title to the improvements extended beyond the original forty-year term of the building lease. There also was no ambiguity in the building lease warranting a conclusion that it was intended to expire in 2017. The building lease and option agreement plainly indicate the parties' intention to extend the building lease until the ground lease with the Holley Family expired in 2027. Finally, RFI ratified the building lease and the option agreement by continuing to occupy the improvements and pay rent and therefore waived any claim that those documents were voidable due to any breach of fiduciary duty or inherent unfairness. The circuit court's judgment is wholly affirmed.

Affirmed.

KLAPPENBACH and BARRETT, JJ., agree.

*Smith, Cohen & Horan, PLC*, by: *Don A. Smith* and *Matthew T. Horan*, for appellant.

*Jones, Jackson, Moll, McGinnis & Stocks, PLC*, by: *Mark Moll* and *Kathryn A. Stocks*, for appellees.