784 S.W.2d 589 (1990)
In re GUIDELINES FOR CHILD SUPPORT ENFORCEMENT.
Supreme Court of Arkansas.
February 5, 1990.
*590 PER CURIAM.
The Arkansas General Assembly enacted Act 948 of 1989, amending Ark.Code Ann. § 9-12-312(a) (Repl.1987), and providing in part for guidelines for child support enforcement.
"9-12-312(a)(1) When a decree is entered, the court shall make such orders concerning the alimony of the wife or the husband and care of the children, if there are any, as are reasonable from the circumstances of the parties and the nature of the case.
(2) In determining a reasonable amount of support initially or upon review to be paid by the noncustodial parent, the court shall refer to the most recent revision of the family support chart. It shall be a rebuttable presumption for the award of child support, that the amount contained in the family support chart is the correct amount of child support to be awarded. Only upon a written finding or specific finding on the record that the application of the support chart would be unjust or inappropriate as determined under established criteria set forth in the support chart, shall the presumption be rebutted.
(3) The family support chart shall be revised at least once every four (4) years by a committee to be appointed by the Chief Justice of the Arkansas Supreme Court to ensure that the support amounts are appropriate for child support awards. The committee shall also establish the criteria for deviation from use of the chart amount.
(4) The Arkansas Supreme Court shall approve the family support chart and criteria upon revision by the committee for use in this state and shall publish same through per curiam order of the court."
Subsequent to the enactment of this legislation the Chief Justice appointed a committee to examine and revise the family support chart previously utilized by the trial court as prescribed by section 9-12-312(a)(2). In addition, the committee was charged with the responsibility to establish the criteria for deviation from the use of the chart.
The following persons were appointed to the committee: Honorable Ellen Brantley, Larry Carpenter, Esq.; Hon. Fred D. Davis; Hon. Jim Gunter; Don Hollingsworth, Esq.; Hon. Warren Kimbrough; Rep. Jodie Mahony; Harry Truman Moore, Esq.; Hon. Andre McNeil; Jeff Pence, Esq.; Hon. Judith Rogers; and Ben Rowland, Esq.
The Committee members met and filed a formal report establishing child support guidelines and deviation criteria.
In accordance with this Court's rule making authority, Act 948 of 1989 and Family Support Act of 1988, Pub.L. No. 100-485 (1988), this Court adopts the formal report of the Committee and as a result, provisionally adopts the Family Support Chart, which was established by a Family Law section committee of the Arkansas Bar Association effective July 1, 1987, pursuant to section 9-12-312(a)(2). A copy of this chart is attached to this per curiam and made a part hereof.
In adopting this per curiam, the Court creates a rebuttable presumption that the amount of child support calculated pursuant to the most recent revision of the Family Support Chart is the amount of *591 child support to be awarded in any judicial proceeding for dissolution of marriage, separation, or child support.
It shall be sufficient in a particular case to rebut the presumption that the amount of child support calculated pursuant to the Family Support Chart is correct, if the court enters in the case a written finding or specific finding on the record that the amount so calculated, after consideration of all relevant factors, is unjust or inappropriate.
Relevant factors to be considered by the court in determining appropriate amounts of child support shall include:
1. Food;
2. Shelter and utilities;
3. Clothing;
4. Medical expenses;
5. Educational expenses;
6. Dental expenses;
7. Child Care;
8. Accustomed standard of living;
9. Recreation;
10. Insurance;
11. Transportation expenses; and
12. Other income or assets available to support the child from whatever source.
Additional factors may warrant adjustments to the child support obligations and shall include:
1. The procurement and/or maintenance of life insurance, health insurance, dental insurance for the children's benefit;
2. The provision or payment of necessary medical, dental, optical, psychological or counseling expenses of the children (e.g. orthopedic shoes, glasses, braces, etc.);
3. The creation or maintenance of a trust fund for the children;
4. The provision or payment of special education needs or expenses of the child;
5. The provision or payment of day care for a child; and
6. The extraordinary time spent with the non-custodial parent, or shared or joint custody arrangements.
Weekly take home pay, as it relates to the Family Support Chart, refers to the definition of income in the federal income tax laws, less proper deductions for:
1. Federal and state income tax;
2. Social security (FICA) or railroad retirement equivalent;
3. Medical insurance; and
4. Presently paid support for other dependents by Court order.
In addition to the award of child support, the court order shall provide for the child's health care needs, which would normally include health insurance if available to either parent at reasonable cost.
In publishing its per curiam, this Court recognizes that the trial court has continuing jurisdiction to modify child support orders to advance the welfare of the child when there is a material change in circumstances. See Hitt v. Maynard, 265 Ark. 31, 576 S.W.2d 211 (1979); Lively v. Lively, 222 Ark. 501, 261 S.W.2d 409 (1953). Approval of the Family Support Chart by this Court does not per se create a material change in circumstances. In determining requested modifications of child support orders entered prior to the effective date hereof, the trial court should consider the totality of the present circumstances of the parties and avoid modifications that would work undue hardship on the parties or any persons presently dependent thereon.
Inasmuch as this is a provisional order of the Court, the Court directs the Chief Justice and the Committee on Child Support to continue its charge to study, and revise where necessary, the guidelines for child support to ensure the proper enforcement of child support awards in this state.
GLAZE, J., concurs.
HICKMAN and NEWBERN, JJ., dissent.

*592
 APPENDIX
 WEEKLY FAMILY SUPPORT CHART (Effective July 1, 1987)
WEEKLY TAKE-HOME DEPENDENTS
PAY ONE TWO THREE FOUR FIVE
---------------------------------------------------------------------
$100.00 25.00 30.00 40.00 50.00 60.00
$110.00 27.50 33.00 44.00 55.00 66.00
$120.00 30.00 36.00 48.00 60.00 72.00
$130.00 32.50 39.00 52.00 65.00 78.00
$140.00 35.00 42.00 56.00 70.00 84.00
$150.00 37.50 45.00 60.00 75.00 90.00
$160.00 40.00 48.00 64.00 80.00 96.00
$170.00 42.50 51.00 68.00 85.00 102.00
$180.00 45.00 54.00 72.00 90.00 108.00
$190.00 47.50 57.00 76.00 95.00 114.00
$200.00 50.00 60.00 80.00 100.00 120.00
$210.00 51.00 62.00 83.00 104.00 125.00
$220.00 52.00 64.00 86.00 108.00 130.00
$230.00 53.00 66.00 89.00 112.00 135.00
$240.00 54.00 68.00 92.00 116.00 140.00
$250.00 55.00 70.00 95.00 120.00 145.00
$260.00 56.00 72.00 98.00 124.00 150.00
$270.00 57.00 74.00 101.00 128.00 155.00
$280.00 58.00 76.00 104.00 132.00 160.00
$290.00 59.00 78.00 107.00 136.00 165.00
$300.00 60.00 80.00 110.00 140.00 170.00
$310.00 61.00 82.00 113.00 144.00 175.00
$320.00 62.00 84.00 116.00 148.00 180.00
$330.00 63.00 86.00 119.00 152.00 185.00
$340.00 64.00 88.00 122.00 156.00 190.00
$350.00 65.00 90.00 125.00 160.00 195.00
$360.00 66.00 92.00 128.00 164.00 200.00
$370.00 67.00 94.00 131.00 168.00 205.00
$380.00 68.00 96.00 134.00 172.00 210.00
$390.00 69.00 98.00 137.00 176.00 215.00
$400.00 70.00 100.00 140.00 180.00 220.00
$410.00 71.00 102.00 143.00 184.00 225.00
$420.00 72.00 104.00 146.00 188.00 230.00
$430.00 73.00 106.00 149.00 192.00 235.00
$440.00 74.00 108.00 152.00 196.00 240.00
$450.00 75.00 110.00 155.00 200.00 245.00
$460.00 76.00 112.00 158.00 204.00 250.00
$470.00 77.00 114.00 161.00 208.00 255.00
$480.00 78.00 116.00 164.00 212.00 260.00
$490.00 79.00 118.00 167.00 216.00 265.00
$500.00 80.00 120.00 170.00 220.00 270.00
$510.00 81.00 122.00 173.00 224.00 275.00
$520.00 82.00 124.00 176.00 228.00 280.00
$530.00 83.00 126.00 179.00 232.00 285.00
$540.00 84.00 128.00 182.00 236.00 290.00
$550.00 85.00 130.00 185.00 240.00 295.00
$560.00 86.00 132.00 188.00 244.00 300.00
$570.00 87.00 134.00 191.00 248.00 305.00
$580.00 88.00 136.00 194.00 252.00 310.00
$590.00 89.00 138.00 197.00 256.00 315.00
$600.00 90.00 140.00 200.00 260.00 320.00
 MONTHLY SUPPORT CHART (Effective July 1, 1987)
MONTHLY TAKE-HOME DEPENDENTS
PAY ONE TWO THREE FOUR FIVE
---------------------------------------------------------------------
$ 500.00 125.00 150.00 200.00 250.00 300.00
$ 550.00 137.50 165.00 220.00 275.00 330.00

*593
$ 600.00 150.00 180.00 240.00 300.00 360.00
$ 650.00 162.50 195.00 260.00 325.00 390.00
$ 700.00 175.00 210.00 280.00 350.00 420.00
$ 750.00 187.50 225.00 300.00 375.00 450.00
$ 800.00 200.00 240.00 320.00 400.00 480.00
$ 850.00 210.00 255.00 340.00 425.00 510.00
$ 900.00 220.00 265.00 355.00 445.00 535.00
$ 950.00 225.00 275.00 370.00 465.00 560.00
$1000.00 230.00 285.00 385.00 485.00 585.00
$1050.00 235.00 295.00 400.00 505.00 610.00
$1100.00 240.00 305.00 415.00 525.00 635.00
$1150.00 245.00 315.00 430.00 545.00 660.00
$1200.00 250.00 325.00 445.00 565.00 685.00
$1250.00 255.00 335.00 460.00 585.00 710.00
$1300.00 260.00 345.00 475.00 605.00 735.00
$1350.00 265.00 355.00 490.00 625.00 760.00
$1400.00 270.00 365.00 505.00 645.00 785.00
$1450.00 275.00 375.00 520.00 665.00 810.00
$1500.00 280.00 385.00 535.00 685.00 835.00
$1550.00 285.00 395.00 550.00 705.00 860.00
$1600.00 290.00 405.00 565.00 725.00 885.00
$1650.00 295.00 415.00 580.00 745.00 910.00
$1700.00 300.00 425.00 595.00 765.00 935.00
$1750.00 305.00 435.00 610.00 785.00 960.00
$1800.00 310.00 445.00 625.00 805.00 985.00
$1850.00 315.00 455.00 640.00 825.00 1010.00
$1900.00 320.00 465.00 655.00 845.00 1035.00
$1950.00 325.00 475.00 670.00 865.00 1060.00
$2000.00 330.00 485.00 685.00 885.00 1085.00
$2050.00 335.00 495.00 700.00 905.00 1110.00
$2100.00 340.00 505.00 715.00 925.00 1135.00
$2150.00 345.00 515.00 730.00 945.00 1160.00
$2200.00 350.00 525.00 745.00 965.00 1185.00
$2250.00 355.00 535.00 760.00 985.00 1210.00
$2300.00 360.00 545.00 775.00 1005.00 1235.00
$2350.00 365.00 555.00 790.00 1025.00 1260.00
$2400.00 370.00 565.00 805.00 1045.00 1285.00
$2450.00 375.00 575.00 820.00 1065.00 1310.00
$2500.00 380.00 585.00 835.00 1085.00 1335.00
$2550.00 385.00 595.00 850.00 1105.00 1360.00
$2600.00 390.00 605.00 865.00 1125.00 1385.00
$2650.00 395.00 615.00 880.00 1145.00 1410.00
$2700.00 400.00 625.00 895.00 1165.00 1435.00
$2750.00 405.00 635.00 910.00 1185.00 1460.00
$2800.00 410.00 645.00 925.00 1205.00 1485.00
$2850.00 415.00 655.00 940.00 1225.00 1510.00
$2900.00 420.00 665.00 955.00 1245.00 1535.00
$2950.00 425.00 675.00 970.00 1265.00 1560.00
$3000.00 430.00 685.00 985.00 1285.00 1585.00

GLAZE, Justice, concurring.
From my reading of my colleague's dissent, I note that Justice Hickman disagrees with this court's decision to follow the General Assembly's directives contained in Act 948 of 1989 (now compiled as Ark.Code Ann. § 9-12-312(a)(4) (Supp.1989)). By adopting by rule the child support chart and deviation factors, he complains that this court has violated the separation of powers doctrine. In sum, he says such matters are substantive law and the General *594 Assembly has the sole power to legislate such child support matters. Perhaps. However, there is legitimate authority to the contrary. See Schenek v. Schenek, 161 Ariz. 580, 780 P.2d 413 (App.1989) (child support guidelines promulgated by the supreme court held procedural in concept because they operated as presumptions); Dalton v. Clanton, 559 A.2d 1197 (Del.Super.Ct.1989) (family court's adoption of procedure in making child support determinations was held consistent with its statutory obligation to make and publish court rules governing policies, processes, practices and procedures); Surman v. Surman, No. 88 C.A. 85, 1989 WL 71101 (Ohio App. June 22, 1989) (LEXIS, LEXSEE Service) (child support guidelines adopted by supreme court held not in violation of separation of powers); see contra Fitzgerald v. Fitzgerald, 566 A.2d 719 (D.C.1989).
While Act 948 might eventually be held to grant unlawful authority to this court, we must allow the system or process to work its normal course. In each of the jurisdictions above, party litigants challenged the child support guidelines adopted under the various courts' rulemaking authority, and then the various appellate courts decided the validity or constitutionality of the courts' actions. Undoubtedly, an Arkansan will file litigation and raise similar challenges to Act 948's constitutionality and to this court's decision to comply with the dictates of that Act. If, indeed, Act 948 is shown to be unconstitutional, I have every confidence that this court will so declare. Meanwhile, Act 948 is presumptively constitutional, and this court is obliged to follow it.
HICKMAN, Justice, dissenting.
At the eleventh hour we are told that if we do not adopt this support chart and guidelines, the state will lose "federal funds." (I suppose that means millions since the federal government only deals in such denominations.) That is entirely irrelevant to our obedience to the constitution.
A committee was hastily formed two weeks ago, quickly rubberstamped the proposal and a majority of this court has abdicated its responsibility to uphold the constitution.
The legislature cannot order us to adopt legislation and this court cannot legislate. These are fundamental principles of constitutional law expressed in the Arkansas Constitution, Art. 4, §§ 1 and 2. See 16 Am.Jur.2d Constitutional Law, §§ 335 and 337. We have held, as all courts have held, that the legislative bodies cannot delegate their power to enact laws to the executive or judicial branch of government. Wenderoth v. City of Ft. Smith, 251 Ark. 342, 472 S.W.2d 74 (1971).
In this case by Act 948 of 1989, we have the legislature unequivocally delegating to a court the power to legislate. Actually the legislature orders us to adopt this legislation. Ark.Code Ann. § 9-12-312(a)(4) (Supp.1989) reads: "The Arkansas Supreme Court shall approve the family support chart and criteria upon revision by the committee for use in this state and shall publish same through per curiam order of the court." (Italics supplied.)
It is ridiculous to uphold an act that orders a court to approve a report of a committee. See Ball v. Roberts, 291 Ark. 84, 722 S.W.2d 829 (1987); McConnell v. State, 227 Ark. 988, 302 S.W.2d 805 (1957). What we are saying is that when this committee adopts what the law will be regarding support then we shall approve it and make it law.
This act not only illegally delegates the legislative power, but it also invades the power of this court to adjudicate. Is this act some sort of legal joke?
Neither can the court invoke its "inherent power" to make rules. That does not encompass the right to enact substantive law. Whether a parent supports a child and according to what criteria, is purely a matter of substantive law. It is not remotely procedural. See 16 Am.Jur.2d § 311.
I am appalled that this court would so easily and quietly abide by the legislation without serious consideration. No one has asked us to do this. The court is, on its own, pursuant to the act, writing this legislation. *595 It is a serious breach of the constitution and degrades this institution. It matters not that the legislature had the good intentions: we are better able to decide this question than they. It matters not that other states may have ignored their constitutional duty. When this legislation was proposed, the lawyers for the legislature, the governor, or the judicial department should have told the general assembly that it was unconstitutional. The general assembly should have been promptly informed after it was passed that this act is blatently unconstitutional, and that we could not comply with the act.
The concurring opinion suggests we cannot question the constitutionality of a rule we adopt. I respectively dissent.
NEWBERN, J., joins the dissent.