Jerald F. COGHILL, Sr., Appellant,

v.

Darla J. COGHILL, Appellee.

No. S–4071.

Supreme Court of Alaska.

July 10, 1992.

---

Robert A. Sparks and William R. Satter-
berg, Jr., Law Offices of William R. Satter-
berg, Jr., Fairbanks, for appellant.

R. Poke Haffner, Asst. Atty. Gen., Fairbanks, Charles E. Cole, Atty. Gen., Juneau, for Child Support Enforcement Div., Dept. of Revenue, State of Alaska.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

RABINOWITZ, Chief Justice.

### FACTS AND PROCEEDINGS

Darla and Jerald Coghill were married in November 1972 in Nenana. They had four children. On March 22, 1985, the Coghills obtained a decree of dissolution of marriage. Attached to this decree, was the parties' agreement regarding child custody. Under the terms of the agreement Jerald had physical custody of the older children; Darla was given custody of the younger children, and both parents were accorded visitation rights. The agreement made no provision for child support.

Approximately four and one-half years later Darla filed a motion for child support pursuant to Civil Rule 90.3. In support of the motion, Darla informed the superior court that she has had sole custody of the four children since the end of the school year in 1985 and that her adjusted annual income from her full time job with the Yukon–Koyakuk School District was $18,659.48. She estimated her monthly income at $1500.00 and her monthly expenses at $1223.00. She stated that Jerald had voluntarily paid $400.00 per month in child support until his remarriage in March 1989. Darla estimated Jerald's income at $81,063.16. Therefore, she requested child support of $1800.00 per month, pursuant to Civil Rule 90.3, based on the support allowable for four children on an income greater than $60,000.

At the time of Darla's motion for child support, Jerald was self employed. He owned Jerry & Sons Repair & Service, a sole proprietorship trucking business. In a pretrial memorandum, Jerald stated that his adjusted annual income for 1989, for Civil Rule 90.3 purposes, was $23,556.00.

However, Jerald further asserted that his 1989 income overstated his earning capacity. He noted that his trucking business had lost a major contract and that it had accrued expenses which had not been paid in 1989. Therefore, he requested the superior court to calculate his earning capacity based on the first quarter of 1990. On this basis, he estimated his 1990 annual adjusted income to be $12,796.00. Additionally, Jerald argued that Civil Rule 90.3 was invalid because its promulgation by this court was unauthorized and because its support guidelines were arbitrary and capricious.

The superior court found that our adoption of Civil Rule 90.3 was a change in circumstances "allowing modification of the pre-existing terms of the decree of dissolution in this matter according to Alaska Statute 25.24.170." The superior court also held that Civil Rule 90.3 was legally adopted and that it was applicable to this case. The court concluded that Jerald's 1989 income provided the best estimate of his future income. The court computed Jerald's "available, annual adjusted income" for Civil Rule 90.3 purposes to be $43,262.00 after accepting several deductions to Jerald's gross income and disallowing others.

The superior court stated that it "specifically fails to find clear and convincing evidence that manifest [injustice] would result if the support award [under the Civil Rule 90.3 guidelines and formula] were not varied." Accordingly, the superior court ordered that Jerald pay Darla $1297.86 per month for child support beginning June 1, 1990, subject to a "50% visitation credit, when and if exercised." The court also determined that Jerald was responsible for child support arrearages in the amount of $7,710.63, and found that any future "collections of support shall be ordered paid through the Child Support Enforcement Agency; all future modifications shall be by administrative review by such agency."

Jerald appeals, alleging that the superior court erred in its calculation of his income and its failure to consider Darla's actual costs of supporting the children. Addition-

ally, he argues that Civil Rule 90.3 is unconstitutional, both on its face and as applied. Pursuant to AS 25.27.045, the Attorney General entered an appearance as counsel of record on behalf of the Child Support Enforcement Division, and filed an appellee's brief.

## I. DID THE SUPERIOR COURT ERR IN ITS CALCULATIONS OF THE PARTIES' INCOME AND COSTS? [1]

### A. Was the superior court's award of child support unreasonable because it was not based on Darla's actual costs?

Jerald points to evidence in the record that Darla's household costs for one year amounted to $14,540.00. He then argues that the child support award of $1,297.86 per month is excessive in that it is "sufficient ... to practically support [Darla's] entire household." Therefore, Jerald considers the $1,297.86 per month award "unreasonable."

In *Smith v. Smith*, 673 P.2d 282, 283 (Alaska 1983), we held that the superior court abused its discretion when it awarded child support in an amount greater than that which the custodial parent had requested. Jerald is raising a similar argument in that he claims that the superior court abused its discretion in awarding child support that exceeded actual need.

■ The superior court has "broad equitable powers" to fashion a child support award. *Smith*, 673 P.2d at 283. The superior court presumptively does not abuse its discretion when it awards child support

based on Civil Rule 90.3. *See* Alaska R.Civ.P. 90.3, Commentary VI ("the rule presumes that support calculated under 90.3(a) or (b) does not result in manifest injustice...."); Alaska R.Civ.P. 90.3(c)(1) ("The court may vary the child support award as calculated under the other provisions of this rule for good cause upon proof by clear and convincing evidence that manifest injustice would result if the support award were not varied."). Therefore, in order for Jerald to succeed in his claim that the award was unreasonable, he must demonstrate that the superior court abused its discretion by failing to find "good cause" for departing from the formula of Civil Rule 90.3.

### B. Does the low level of Darla's actual costs constitute good cause for variance from the child support formula of Civil Rule 90.3?

■ Civil Rule 90.3(c)(1) provides that "[t]he court may vary the child support award as calculated under the other provisions of this rule for good cause upon proof by clear and convincing evidence that manifest injustice would result if the support award were not varied." Alaska R.Civ.P. 90.3(c)(1). The rule also enumerates certain circumstances which might possibly constitute good cause for varying from its formula. This enumeration includes a finding of "unusually low expenses." [2]

On appeal, Jerald argues for a variance from Civil Rule 90.3(a)(2) on the basis that Darla's actual costs, before he began paying full and regular child support, were unusually low. The commentary to Civil

---

**1.** A child support award will not be overturned unless the trial court has abused its discretion. *Richmond v. Richmond*, 779 P.2d 1211, 1216 (Alaska 1989). We will examine the entire record to determine whether the superior court has abused its discretion, and will only find such an abuse when we are left with a definite and firm conviction that a mistake has been made. *Id.* (citing *Hunt v. Hunt*, 698 P.2d 1168, 1172 (Alaska 1985)). Civil Rule 90.3 provides the superior court discretion in determining what constitutes income. *Bergstrom v. Lindback*, 779 P.2d 1235, 1237 (Alaska 1989) (citing Civil Rule 90.3(a)(1)). The superior court's findings of fact regarding a party's income will be reversed only if clearly erroneous. *Id.* (cit-

ing *Smith v. Smith*, 673 P.2d 282, 283 (Alaska 1983)). Questions of statutory interpretation and constitutionality are reviewed *de novo*. *Zsupnik v. State*, 789 P.2d 357, 359 (Alaska 1990) (statutory interpretation); *State v. Anthony*, 810 P.2d 155, 156–57 (Alaska 1991) (constitutional questions).

**2.** Alaska R.Civ.P. 90.3(c)(1)(A). *See also Coats v. Finn*, 779 P.2d 775, 776 (Alaska 1989) ("Rule 90.3 does not abrogate the general rule that a non-custodial parent is obligated to contribute only a fair share of the amount required to meet the reasonable needs of the parties' minor children.").

Rule 90.3 explains that economic analyses have shown that "the proportion of income parents devote to children in intact families is relatively constant across income levels." Alaska R.Civ.P. 90.3, Commentary II; *Coats v. Finn,* 779 P.2d 775, 776 n. 5 (Alaska 1989) (quoting Report of the Child Support Enforcement Commission to Governor William J. Sheffield, October 1, 1985 (Sheffield Commission Report)). Therefore, the mere fact that Darla's household expenses were low prior to receiving full and regular child support does not, standing alone, establish good cause for varying from the support guidelines of Civil Rule 90.3. In order to make a showing of manifest injustice Jerald would have to prove that expenses of his children would have no relationship to the level of income available to be spent on them.

On the basis of our review of the record we are persuaded that Jerald did not sustain his burden of proving by clear and convincing evidence that a child support award in accordance with Civil Rule 90.3 would result in manifest injustice. Therefore we conclude that the superior court did not abuse its discretion in deciding to adhere to the rule's support formula.[3]

C. *Was the superior court's failure to find that Jerald's 1989 income was not representative of his earning capacity clearly erroneous?*

█ Jerald argues that he proved at trial that his earning capacity had decreased because of substantial changes in his business. Specifically, Jerald testified that before 1989 his trucking business had an oral agreement to provide services to Mapco. However, as a result of the fact that he hadn't had a dispatch from Mapco in six months, Jerald apparently expected a decrease in income. Jerald argues that "[t]he trial court's finding regarding estimating Mr. Coghill's income is clearly erroneous, because it fails to account for the substantial changes in Mr. Coghill's business."

The superior court calculated Jerald's income from the evidence it had before it. As the court stated, "the best evidence for the projection of Mr. Coghill's 1990 income is the 1989 calendar year as the base period. The court adopts this as the only twelve month period for which the court has complete information." The only other data the superior court had before it was data from the first quarter of 1990. Given the speculative nature of the 1990 evidence, the court did not abuse its discretion in adopting the 1989 figures. *See Pugil v. Cogar,* 811 P.2d 1062, 1067 (Alaska 1991) (upholding a determination of income based on an average of the non-custodial parent's past income when the non-custodial parent worked in an industry where employment and income were erratic); *Hartland v. Hartland,* 777 P.2d 636, 640 (Alaska 1989) (holding that a party who fails to provide sufficient evidence at trial for a valuation cannot object to the resulting valuation on the basis of inadequate evidence).

That the superior court used the data from 1989 does not indicate that it made a finding of fact that no change in Jerald's earning capacity had occurred, or that it rejected the testimony of Jerald's expert.[4]

---

**3.** At trial, Jerald sought to question Darla about her household expenses, in an attempt to prove that Darla had unusually low household costs. While the superior court initially allowed some questions in this regard, the court eventually barred Jerald from pursuing this line of questioning when it became apparent that Jerald was on a "fishing expedition." At the time that the superior court disallowed questioning it stated: "If you can provide me with an offer of proof that this would be manifestly unjust and would be a windfall to this woman, then I'll let you continue." Jerald made no such offer of proof. The superior court did not abuse its discretion by disallowing questions on this theory.

**4.** The court allowed Rick Schikora, a CPA, to testify as an expert on the transportation industry. However, the court assured Darla that it would consider her objections to his qualifica-

Significantly, at trial Darla testified that "there's a lot of times they need things and I don't have the money to buy it." She also testified that her grocery bill, even before she received regular child support, was approximately $600–700 per month. Additionally, Darla testified that she had to purchase clothing for the children and that her clothing expenses were not unusually low. While Darla's monthly rent was only $94, there was no showing that she was able to avoid the normal costs of living assumed by Civil Rule 90.3.

Rather, the superior court properly exercised its discretion and, on the basis of the most complete evidence before it, chose the best indicator of Jerald's future earning capacity. *See Pugil,* 811 P.2d at 1067. Hence, we reject Jerald's contention that the superior court's finding of fact in regard to Jerald's 1989 income was clearly erroneous.

D. *Did the superior court abuse its discretion by disallowing various deductions in its calculation of Jerald's income?*

As discussed above the superior court determined Jerald's income based on the evidence of his income in 1989 which showed a gross income of $182,021. From gross sales receipts, Jerald subtracted various business expenses to yield his actual income. The superior court stated that it accepted the majority of Jerald's deductions as "ordinary and reasonable business expenses for the purposes of Alaska Civil Rule 90.3." However, the court disallowed deductions for certain expenses relating to use of an automobile, work clothing, meals, a home office, and imputed taxes. Further, the court allowed only a deduction for straight line depreciation.

On appeal, Jerald contends that the superior court erred when it denied these disputed deductions.

■ Civil Rule 90.3(a)(1) reads in part that "[a]djusted annual income as used in this rule means the parent's total income from all sources." We have previously held that "[g]iven this broad definition, we believe that the superior court has broad discretion" in deciding whether certain funds should be included in income for Civil Rule 90.3 purposes. *Bergstrom v. Lindback,* 779 P.2d 1235, 1237 (Alaska 1989).[5]

■ In our view Jerald misunderstands the superior court's denial of his various deductions. The court was not implying that his expenses for meals, clothing, etc., were not legitimate business expenses. Rather, the court recognized that such expenses reduced Jerald's living expenses. Here, where the meals were consumed by Jerald and where the type of clothing purchased by Jerald was not significantly different from the clothing purchased by most Alaskans, the superior court properly disallowed deductions for these and other expenses for the purpose of computing Civil Rule 90.3 income.[6]

■ Additionally, we hold that the superior court properly disallowed a deduction

---

tions as going to the weight of his testimony. More importantly, Schikora's testimony was not conclusive. He stated, "I would say that the trucking industry is not—is not in real good shape at the moment." When asked about Jerald's company in particular, Schikora only noted that Jerald's company now had to compete for dispatches and that, in his opinion, Jerald's company was low priority in the trucking business. None of the testimony presented by Schikora or Jerald was specific and definite enough to enable the superior court to positively conclude that a change in Jerald's earning capacity had occurred, or to estimate what Jerald's earning capacity was if it had changed.

5. The Commentary to Civil Rule 90.3 recognizes the difficulty in defining income when the noncustodial parent is self employed. In this regard, the commentary states,

[i]ncome from self employment ... includes the gross receipts minus the ordinary and necessary expenses required to produce the income. Ordinary and necessary expenses do not include amounts allowable by the IRS for the accelerated component of depreciation expenses, depreciation of real estate, investment tax credits, or any other business expenses determined by the court to be inappropriate. Expense reimbursements and in-kind payments such as use of company car, free housing or reimbursed meals should be included as income if the amount is significant and reduces living expenses.
Alaska R.Civ.P. 90.3, Commentary III.B.

6. The superior court found "the Suburban to be for personal use and not solely for business anymore [sic] than a wage earner drives his personal vehicle to work." Jocelyn Coghill, Jerald's current wife, testified that she used the Suburban to run business errands between home and town, and that Jerald used the pickup truck for transportation between home and work. She also testified that the family used the Suburban for personal use. The court disallowed the entire deduction for the Suburban, but allowed the deduction for the pickup. On this record, we believe the superior court did not abuse its discretion in disallowing some, but not all, of the claimed automobile deductions. *See* Alaska R.Civ.P. 90.3, Commentary III.B.

for imputed taxes based on the income available to Jerald as a result of adding back the deduction for accelerated depreciation.[7] The commentary to Civil Rule 90.3 explicitly states that accelerated depreciation is not a deductible business expense for Rule 90.3 purposes. Alaska R.Civ.P. 90.3, Commentary III.B. We therefore hold that the superior court did not abuse its discretion in disallowing this claimed deduction.

## II. IS CIVIL RULE 90.3 CONSTITUTIONAL?

### A. *Does Civil Rule 90.3 violate the Separation of Powers Doctrine?*

■ Civil Rule 90.3 was promulgated by this court in 1987. In adopting this Rule we noted that:

> This Rule is adopted under the supreme court's interpretive authority pursuant to Article IV, Section 1 of the Alaska Constitution. Thus, it may be superseded by legislation even if the legislation does not meet the procedural requirements for changing rules promulgated under Article IV, Section 15.

As is apparent from the earlier sections of this opinion, the Rule establishes guidelines to enable courts to determine child support awards and institutes a formula for child support awards based on the income of the noncustodial parent. It also allows for variance from the formula in special circumstances. Prior to the promulgation of this rule, there was no set formula to determine child support.

Jerald argues that Civil Rule 90.3 constitutes a substantive change in the law. Accordingly, he contends that this court has violated the doctrine of separation of powers by usurping the law making power granted to the legislature.[8]

*Citizens Coalition v. McAlpine,* 810 P.2d 162 (Alaska 1991), speaks to the difference between court rules adopted pursuant to article IV, section 15, of Alaska's Constitution, and those adopted pursuant to article IV, section 1. Article IV, section 15 grants this court the power to promulgate rules "governing administration of all courts" and "practice and procedure ... in all courts." It also provides that such rules may be changed by a two-thirds vote of the legislature. *Id.* at 165 (quoting Alaska Const., art. IV, § 15). Article IV, section 1, on the other hand, vests the judicial power in a supreme court, a superior court and other courts established by the legislature. "The court's rule-making authority under this section is inherent in the judicial power vested in it, as the supreme court of the state." *Id.* (citing Alaska Const., art. IV, § 1).

*Citizens Coalition* also noted that rules of "substance" rather than "procedure" might not be allowed under article IV, section 15. 810 P.2d at 167. However, under section 1, "the distinction between procedural and substantive rules, while still important, is not dispositive, because our judicial power includes the authority to regulate with greater substantive effect inside the limited ambit of the judicial system, than we could under our article IV, section 15 powers." *Id.* at 167 n. 10 (citations omitted).

Contrary to Jerald's assertion, Civil Rule 90.3 does not modify or amend AS 25.24.160. Alaska Statute 25.24.160 allows courts to set child support awards "as may be just and proper for the parties to contribute toward the nurture and education of their children." AS 25.24.160(a)(1). Civil Rule 90.3 interprets this statute and establishes guidelines to enable courts to determine what is a "just and proper" contribution. Alaska R.Civ.P. 90.3, Commentary I.B. Establishing such guidelines recognizes the need for uniformity across income levels; however, the guidelines also recognize that unique circumstances might require variance from the guidelines. As

---

7. Jerald does not argue that he should be allowed to deduct accelerated depreciation; he seeks only to receive the benefit of imputed taxation on the accelerated portion of depreciation which is determined to be income for Rule 90.3 purposes.

8. *See* Alaska Const., art. IV, § 15; *Bradner v. Hammond,* 553 P.2d 1, 5 (Alaska 1976) (recognizing separation of powers doctrine).

such, the guidelines do not conflict with the statute. Finally, as was explained in *Coats v. Finn*, Civil Rule 90.3 did not overrule prior case law. 779 P.2d 775, 778 (Alaska 1989). In *Coats* this court harmonized Civil Rule 90.3 with prior case law by explaining that even under the rule, the non-custodial parent must contribute a fair share to satisfy the child's reasonable needs. *Id.* (citing *Hunt v. Hunt*, 698 P.2d 1168, 1173 (Alaska 1985)). Thus we conclude that promulgation of Civil Rule 90.3 did not violate the separation of powers doctrine.

### B. Is Civil Rule 90.3 unconstitutional on its face because it violates the due process and equal protection clauses?

Jerald states that "by placing the onus on the non-custodial parent to 'prove' to the trial court that there is some reason to deviate from the standard as set forth in Civil Rule 90.3 effectively constitutes a [sic] irrebuttable presumption of liability without recourse in the law." He believes that "[i]n the instant case, this can be illustrated by the Judge's refusal to examine the Appellee's expenses vis-a-vis the amount of money 90.3 would require the Appellant to pay." Jerald contends that this violates his right to due process. He then concludes, "by failing to require both the custodial and non-custodial parents [sic] income be examined before making a child support determination, Rule 90.3 unconstitutionally deprives the non-custodial parent of equal protection under the law."

The state responds by first citing the evidentiary basis for Civil Rule 90.3 to refute any contention that the rule is arbitrary and capricious. Second, the state denies that the rule creates an irrebuttable presumption. Finally, the state argues that equal protection does not require computation of the non-custodial parent's income, because the custodial parent and the non-custodial parent are not similarly situated.

### 1. Is Civil Rule 90.3 arbitrary and capricious?

■ To answer Jerald's claim that Civil Rule 90.3 has no rational basis, the state

cites to *Coats v. Finn*, where the basis for Civil Rule 90.3 is discussed. 779 P.2d at 776 n. 5, 777 n. 7. In *Coats*, this court quoted extensively from the Sheffield Commission Report. This report contains "strong evidence" that the " 'cost' of raising a child depends on the level of household income." *Id.* at 777 n. 5 (quoting Sheffield Commission Report). Additionally, *Coats* explained that Civil Rule 90.3 did not abrogate the prior case law. *Id.* at 776. Finally, *Coats* again cited to the Sheffield Commission Report to explain the rationale for requiring a heightened burden to prove the need for a variance from the formula: "The formula approach is intended to provide information to the parties and attorneys so that child support may be predictable, reasonable, simple to calculate, without prejudice, and reflect the duty of both parents to support their children commensurate with their abilities." *Id.* at 777 n. 7.

The record indicates that Jerald failed to introduce any evidence showing that the there was no relationship between income and consumption. We therefore conclude that *Coats* is dispositive of Jerald's claim that Civil Rule 90.3 is arbitrary and capricious.

### 2. Does Civil Rule 90.3 violate due process by creating an irrebuttable presumption?

■ Jerald argues that blind application of the Civil Rule 90.3 formula denies non-custodial parents the right to a fair hearing. He believes that this is illustrated in this case by the superior court's denying him the opportunity to question Darla concerning her expenses. As the state points out, however, Civil Rule 90.3(c)(1) specifically allows for exceptions to the formula. Other courts have found that child support guidelines do not offend due process so long as they provide for discretion in their application. *Schenek v. Schenek*, 161 Ariz. 580, 780 P.2d 413 (App.1989); *see also In re Guidelines for Child Support Enforcement*, 301 Ark. 627, 784 S.W.2d 589, 590–91 (1990) (holding that Guidelines create a rebuttable presumption); *Dalton v. Clanton*,

559 A.2d 1197, 1212 (Del.1989) (holding that child support formula creates a rebuttable presumption and an inequitable result rebuts the presumption).

Jerald also argues that the vagueness of the terms "good cause" and "manifest injustice" render the exception meaningless. He charges that without guidance and explanation, superior courts will apply the rigid Rule 90.3 formula by rote, thus depriving a party opposing the use of the formula of his or her due process right to a fair hearing. In support of this argument, Jerald cites *Fitzgerald v. Fitzgerald*, 566 A.2d 719 (D.C.App.1989).

It is true that *Fitzgerald* was concerned with the presumptive nature of the child support guidelines promulgated by the superior court of the District of Columbia. *Id.* at 731 ("Adhering to a presumption in the face of facts to the contrary may constitute an abuse of discretion.") Additionally, the *Fitzgerald* court was troubled by the vagueness of the exceptions to the guidelines. *Id.* ("the party trying to argue against application of the Guidelines faces a monumental obstacle in attempting to demonstrate a case is 'exceptional' without knowing what 'unexceptional' is.") However, *Fitzgerald* did not hold that the child support guidelines were unconstitutionally vague. Rather, the *Fitzgerald* court held that such guidelines would be constitutional "so long as judges and hearing commissioners continue to exercise their discretion to achieve equitable results consistent with existing case law."[9] *Id.* at

732. In light of the holdings in *Coats* that Civil Rule 90.3 does not change the existing case law and that child support awards still must be fair and equitable, we hold that Jerald's argument has no merit. 779 P.2d at 776.[10]

### 3. *Does Civil Rule 90.3 violate equal protection?*

 Turning to Jerald's equal protection argument, the state correctly notes that "[e]qual protection has never required that differently situated persons be treated the same way." Here, Jerald is asking that "the trial court judge examine both the custodial and non-custodial parents [sic] income." Yet, the custodial and noncustodial parents are clearly not similarly situated for the purposes of child support.

 Moreover, applying standard equal protection analysis, the interest that Jerald raises is an economic interest. This interest is not of a high order.[11] Given that the rule has a rational basis, see discussion *supra* at 928–929, under our sliding scale analysis of asserted equal protection violations, the state need only demonstrate a fair and substantial relationship between the distinctions drawn by the rule and the purpose of the rule. *Anthony*, 810 P.2d at 159.

As the commentary to Civil Rule 90.3 states,

Rule 90.3 employs the percentage of income approach. This approach is based on economic analyses which show

**9.** *Fitzgerald* held the Guidelines in question invalid as an unauthorized change by the superior court in the substantive case law promulgated by the court of appeals. 566 A.2d at 726, 732. Civil Rule 90.3 was promulgated by the highest court of Alaska. Accordingly, this holding of *Fitzgerald* is inapplicable here.

**10.** Additionally we note that the record does not support Jerald's claim that an irrebuttable presumption was applied against him when the superior court precluded further cross-examination of Darla in regard to the subject of her expenditures. The superior court allowed Jerald to initiate questioning in this area and would have allowed questioning to continue had Jerald made an offer of proof regarding Darla's unusually low living expenses. Under Civil Rule 90.3 and *Coats*, a noncustodial parent may

rebut the presumption that expenditures are related to income; such a showing would constitute good cause for varying from the schedule provided for in Civil Rule 90.3. The record indicates that if Jerald had evidence that there was no relationship between income and consumption in this particular case, he would have been allowed to prove that a child support award based on 90.3(a)(2) would be manifestly unjust. Jerald failed to offer evidence to rebut the presumption that the relationship between income and consumption exists for his own children while they are under Darla's care.

**11.** *State v. Anthony*, 810 P.2d 155, 158 (Alaska 1991); *State v. Ostrosky*, 667 P.2d 1184, 1193 (Alaska 1983) *appeal dismissed*, 467 U.S. 1201, 104 S.Ct. 2379, 81 L.Ed.2d 339 (1984).

the proportion of income parents devote to their children in intact families is relatively constant across income levels up to a certain upper limit. Applications of the rule should result in a non-custodial parent paying approximately what the parent would have spent on the children if the family was intact.

Integral to the rule is the expectation that the custodial parent will contribute at least the same percentage of income to support the children. The rule operates on the principle that as the income available to both parents increases, the amount available to support the children also will increase. Thus, at least in the sole or primary custodial situation, the contribution of one parent does not affect the obligation of the other parent.

Alaska R.Civ.P. 90.3, Commentary II.

The commentary also states that

[t]he primary purpose of Rule 90.3 is to ensure that child support orders are adequate to meet the needs of children, subject to the ability of parents to pay....

The second purpose of 90.3 is to promote consistent child support awards among families with similar circumstances. Third, the rule is intended to simplify and make more predictable the process of determining child support....

The final purpose of 90.3 is to ensure that Alaska courts comply with state and federal law.

*Id.* at I.B. Thus, we conclude that the percentage of income approach has a fair and substantial relationship to the goals of Civil Rule 90.3

The superior court's judgment is AFFIRMED.

BURKE, Justice, dissenting in part.

I dissent from the holding that the support formula imposed by Civil Rule 90.3 is constitutionally valid. The enactment of such a provision requires, in my judgment, the exercise of legislative power, which the court does not possess. The legislative power of the state is vested in the legislature. Alaska Const. art. II, § 1.