Lee LAWSON, Appellant,

v.

Valerie LAWSON, Appellee.

No. S–11260.

Supreme Court of Alaska.

March 11, 2005.

Lee Lawson, pro se, Appellant.

No appearance by Appellee.

Before: BRYNER, Chief Justice, MATTHEWS, EASTAUGH, FABE, and CARPENETI, Justices.

## OPINION

FABE, Justice.

## I. INTRODUCTION

Lee Lawson appeals a superior court order denying his request to modify his child support obligation. Lee challenges the constitutionality of Alaska Civil Rule 90.3 on the grounds that: (1) this court lacks the authority to create a child support rule; (2) Rule 90.3 is vague and overbroad; and (3) Rule 90.3's financial disclosure requirements violate his rights to due process and privacy and his right against self-incrimination. We affirm the decision of the superior court and hold that Rule 90.3 is constitutional.

## II. FACTS AND PROCEEDINGS

Lee Lawson and Valerie Lawson were living together in Sitka in February 1994 when their son, Kevin, was born. They moved to Sacramento, California in October 1994 and continued to live together until August 1995. Valerie then decided to return to Sitka with Kevin. Lee came back to Alaska in the fall of 1995 and currently resides in Port Alexander.

Superior Court Judge Larry C. Zervos issued a judgment in July 1996 determining that Lee was Kevin's biological father and that he owed Kevin a duty of support. On December 23, 1996, Valerie was awarded legal and physical custody of Kevin; Lee received visitation rights. On August 19, 1997, Lee was ordered to pay $200 a month in child support, retroactive to January 1, 1997. This amount was increased to $311.01 per month on September 15, 1998. Lee requested multiple modifications of child support between 1999 and 2000, but he failed to produce the requisite documentation to support modification. On October 12, 2000, the

superior court again denied his request for modification, finding that there was no evidence to support that he was involuntarily unemployed. Child support was reduced to $218.68 in June 2001 but was increased in October 2002 to $439.10 when Lee found employment. Support was revisited in June of 2003; the superior court reduced Lee's obligation to $217.88 following notice of his voluntary unemployment status. On July 7, 2003, Lee submitted a motion requesting that he be excused from paying child support, but he offered no evidence that his situation had changed since the court's last action in June 2003. The superior court denied this motion on September 18, 2003.

Lee had previously challenged the constitutionality of Rule 90.3 in June 2002. Judge Zervos denied this challenge in a July 2002 order, relying on our decision in *Coghill v. Coghill.*[1] Judge Zervos reiterated this ruling in his September 2003 order. Lee now appeals this order.[2]

## III. STANDARDS OF REVIEW

■ Constitutional questions and other questions of law are reviewed de novo.[3] Our duty is to adopt the rule of law that is most persuasive in light of precedent, reason, and policy.[4]

## IV. DISCUSSION

Lee raises seven issues on appeal that can be grouped into three challenges to the constitutionality of Rule 90.3 and a request that we overrule *Coghill.* He does not dispute any specific factual findings of the superior court.

### A. There Is No Valid Ground To Overturn *Coghill.*

■ In *Coghill,* we addressed many of the issues raised by Lee in this appeal. There we held that "promulgation of Civil Rule 90.3 did not violate the separation of powers doctrine."[5] We also concluded that Civil Rule 90.3 is not arbitrary and capricious, and does not violate either due process or equal protection by creating a presumption against non-custodial parents.[6] Lee now asks us to overrule our decision in *Coghill.* As we explained most recently in *State v. Semancik,* "[w]e will only overrule a prior decision when 'clearly convinced that the rule was originally erroneous or is no longer sound because of changed conditions, and that more good than harm would result from a departure from precedent.'"[7] We conclude that Lee has failed to meet his burden of establishing either of the necessary elements that would justify overruling *Coghill.*

### 1. Rule 90.3 is neither vague nor overbroad.

■ Lee argues that "the best interests of the child" provisions of Rule 90.3 are unconstitutionally vague.[8] He maintains that "[t]here is no statutory definition for 'The Best Interest of the Child' and therefore it is broad, vague, and opinionated which makes the application of this phrase in a court of law unconstitutional." He also argues that the term "gives the courts unrestricted power over the family unit." We considered a similar vagueness challenge to the child support guidelines in *Coghill* and held that "so long as judges and hearing commissioners continue to exercise their discretion to

---

1. 836 P.2d 921, 927–30 (Alaska 1992).

2. Valerie filed a notice of non-participation under Alaska Appellate Rule 204.

3. *See, e.g., Langdon v. Champion,* 745 P.2d 1371, 1372 n. 2 (Alaska 1987).

4. *Id.*

5. 836 P.2d at 928.

6. *Id.* at 928–30.

7. 99 P.3d 538, 540 (Alaska 2004) (quoting *State v. Fremgen,* 914 P.2d 1244, 1245 (Alaska 1996)).

8. The two provisions of Civil Rule 90.3 that mention "best interests of the child" are:

 (c)(3) In addition to ordering a parent to pay child support as calculated under this rule, the court may, in appropriate circumstances, order one or more grandparents of a child to pay child support to an appropriate person in an amount determined by the court to serve the best interests of the child.

 . . . .

 (k) . . . The court may allocate the dependent tax deduction for each child between the parties as is just and proper and in the child's best interests.

achieve equitable results consistent with existing case law" there should be no vagueness concern.[9] The term "best interests of the child" is no more general than the terms "good cause" and "manifest injustice" that survived a vagueness challenge in *Coghill*.[10] Lee fails to demonstrate how the superior court's exercise of discretion in this case was unfair or inequitable, nor does he distinguish *Coghill*. We therefore conclude that Rule 90.3 is not vague and that our previous holding in *Coghill* was not clearly erroneous.

## 2. Rule 90.3 does not violate equal protection.

■ Lee also contends that "the sole purpose" of Rule 90.3 is "for the State to collect monies...." He further argues that the federal child support scheme, 42 U.S.C. § 658, "creates an incentive and rewards state [j]udges for taking children away from perfectly fit parents by telling [s]tate [j]udges that the [f]ederal government will pay the [s]tate 6% of what the [j]udge orders the 'non-custodial parent' to pay the 'custodial parent' in child support." Lee classifies these arguments as "vagueness challenges," but he does not point to language in the rule that is unclear or overbroad. Rather, he seems to object to the classification of custodial and non-custodial parents as a violation of equal protection.

We have considered equal protection challenges to Rule 90.3 on previous occasions and have held each time that "custodial and non-custodial parents are not similarly situated for purposes of child support." [11] As we explained in *Coghill*, the commentary to Rule 90.3 is explicit as to why non-custodial and custodial parents must be examined differently: "Applications of the rule should result in a non-custodial parent paying approximately what the parent would have spent on the children if the family was intact. Integral to the rule is the expectation that the custodial parent will contribute at least the same percentage of income to support the children." [12] We see no reason to conclude that our previous holding that "the percentage of income approach has a fair and substantial relationship to the goals of Civil Rule 90.3" [13] was clearly erroneous or will cause more harm than good.

## 3. Rule 90.3 does not violate the Fourth Amendment, Fifth Amendment, or Alaska's constitutional right to privacy.

■ Lee's third challenge to the constitutionality of Rule 90.3 concerns the requirement that a non-custodial parent provide financial documentation to the court. He contends that this requirement violates his Fourth Amendment right to be free from unreasonable searches; [14] his Fifth Amendment right to not give testimony against himself; [15] and his right to privacy as pro-

---

**9.** *Coghill*, 836 P.2d at 929 (quoting *Fitzgerald v. Fitzgerald*, 566 A.2d 719, 732 (D.C.App.1989)).

**10.** *Id.; see also Williams v. State, Dep't of Revenue*, 895 P.2d 99, 105–06 (Alaska 1995) ("extraordinary and unusual" not vague); *R.C. v. State, Dep't of Health & Soc. Servs.*, 760 P.2d 501, 506 (Alaska 1988) (citing other cases finding "unfit," "improper," "neglected," "basic, essential and necessary needs," and "reasonable parental care" not vague); *Storrs v. State Medical Bd.*, 664 P.2d 547, 549–50 (Alaska 1983) ("professional incompetence" not vague).

**11.** *Arnesen v. Anchorage Refuse, Inc.*, 925 P.2d 661, 668 (Alaska 1996) (holding "[c]ustodial parents qualify for the personal exemption because they care for the children for the better part of the year") (citing *Coghill*, 836 P.2d at 929 (finding child support only implicates an economic interest and the rule satisfies rational basis review)). *Cf. State, Dep't of Revenue, Child Support Enforcement Div. v. Beans*, 965 P.2d 725, 729 (Alaska 1998) (holding child support obligor's

equal protection rights were not violated by statute allowing suspension of license for failure to pay child support).

**12.** Alaska Civil Rule 90.3, Commentary II; *see also Coghill*, 836 P.2d at 930 (quoting Commentary to Rule 90.3).

**13.** *Coghill*, 836 P.2d at 930.

**14.** The Fourth Amendment states: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.

**15.** The Fifth Amendment guarantees that "no person ... shall be compelled in any criminal case to be a witness against himself...." U.S. Const. amend. V.

tected by the Alaska Constitution.[16] Lee fails to provide any legal authority to support his claims.

The United States Supreme Court has held that the "chief evil" the Fourth Amendment is directed at preventing is physical entry of the home.[17] The Fourth Amendment is usually applied in cases involving police searches made either without a valid warrant,[18] without probable cause,[19] or with excessive force.[20] In this instance, Lee is asked to comply with a court order, not a police investigation or search. And the court's order requiring financial information is designed to assist the court in establishing a non-custodial parent's adjusted income in order to calculate the appropriate amount of child support as required by Rule 90.3.[21] We conclude this does not constitute a "search" within the meaning of the Fourth Amendment.

The "core protection" afforded by the self-incrimination clause of the Fifth Amendment is "a prohibition on compelling a criminal defendant to testify against himself at trial."[22] Lee fails to raise any argument to support a claim that the Fifth Amendment should be extended to child support financial affidavits. We need not decide the precise boundaries of the Fifth Amendment in this case in order to conclude that the submission of financial documentation does not violate the Fifth Amendment.

Lee's final argument is that his right to privacy under the Alaska Constitution is violated by Rule 90.3's requirement that he disclose his income. We rely on a three-part test to determine whether a person's privacy rights have been violated: (1) whether a party seeking protection has a legitimate expectation that materials or information will not be disclosed; (2) whether disclosure is nonetheless required to serve a compelling state interest; and (3) if so, whether disclosure will occur in the least-intrusive manner with respect to the right to privacy.[23] Lee presents no evidence or arguments to indicate how his right to privacy is violated under this test. The purpose of Rule 90.3's guidelines is "to ensure that child support orders are adequate to meet the needs of children...."[24] As noted in the commentary to Rule 90.3, "[t]he obligation to provide child support is more important than the obligation to fulfill most other obligations."[25] We explained in *Koller v. Reft* that if a parent who shares physical custody of a child "could stop working and claim that his or her income could not be imputed ... then no support would be provided for that child. This result would be contrary to the very purpose of the Rule 90.3 guidelines."[26] We conclude that the state has a compelling interest in supporting children. Non-custodial parents are required to supply financial

**16.** The Alaska Constitution was amended in 1972 to· read: *"Right of Privacy.* The right of the people to privacy is recognized and shall not be infringed." Alaska Const. art. I, § 22.

**17.** *See Payton v. New York,* 445 U.S. 573, 585, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980).

**18.** *See, e.g., Groh v. Ramirez,* 540 U.S. 551, 555–56, 124 S.Ct. 1284, 157 L.Ed.2d 1068 (2004) (explaining that Fourth Amendment requires particularity in a warrant for it to be facially valid).

**19.** *See, e.g., Atwater v. City of Lago Vista,* 532 U.S. 318, 354, 121 S.Ct. 1536, 149 L.Ed.2d 549 (2001) ("If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender.").

**20.** *See, e.g., Graham v. Connor,* 490 U.S. 386, 388, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) (holding that excessive force claim properly analyzed under Fourth Amendment).

**21.** Civil Rule 90.3(a) states: "A child support award in a case in which one parent is awarded primary physical custody ... will be calculated as an amount equal to the adjusted annual income of the non-custodial parent multiplied by a percentage specified in subparagraph (a)(2)."

**22.** *United States v. Patane,* ⸺ U.S. ⸺, ⸺, 124 S.Ct. 2620, 2626, 159 L.Ed.2d 667 (2004).

**23.** *Alaska Wildlife Alliance v. Rue,* 948 P.2d 976, 980 (Alaska 1997) (citing *Jones v. Jennings,* 788 P.2d 732, 738 (Alaska 1990)).

**24.** *Koller v. Reft,* 71 P.3d 800, 806 (Alaska 2003) (quoting Alaska Rule 90.3 (Commentary II.B)).

**25.** Alaska Civil Rule 90.3 Commentary VI.B(4).

**26.** 71 P.3d at 806.

information because it is necessary for the courts to have this information in order to calculate adequate child support.[27] We therefore conclude that the disclosure of financial information does not violate Alaska's constitutional right to privacy.

Lee has not demonstrated that *Coghill* was clearly erroneous when it was decided or that more good than harm would result from a departure from established precedent. Lee has also not advanced a single argument to demonstrate that changed conditions exist since *Coghill* that would justify overturning established precedent. We therefore are not persuaded to depart from principles of stare decisis and abandon our prior holding in *Coghill.*

### B. Rule 90.3 Does Not Violate Separation of Powers.

 Lee also argues that this court lacks the authority to promulgate Rule 90.3 or require non-custodial parents to pay child support. He questions whether we have the authority to write a rule, apply it as law, and decide its constitutionality. We answered this contention in *Coghill.* We held that Civil Rule 90.3 was an interpretative rule promulgated under article IV, section 1 of the Alaska Constitution, vesting the judicial power of the state in this court.[28] Inherent in the judicial power is the authority to make rules of interpretation that govern how courts interpret constitutional, statutory, or common law requirements.[29] We explained in *Coghill* that

Alaska Statute 25.24.160 allows courts to set child support awards "as may be just and proper for the parties to contribute toward the nurture and education of their children." Civil Rule 90.3 interprets this statute and establishes guidelines to enable courts to determine what is a "just and proper" contribution. Establishing such guidelines recognizes the need for uniformity across income levels; however, the guidelines also recognize that unique circumstances might require variance from the guidelines.[30]

Similarly, in *Koss v. Koss,* we cited language from the 1977 session laws that enacted the Child Support Enforcement Act[31] as additional evidence that the legislature authorized the enforcement of child support obligations by the courts.[32] The legislature stated that "the common law and Alaska statutes pertaining to the establishment and enforcement of the child support obligations shall be augmented by additional remedies in order to meet the needs of minor children."[33]

Lee relies on Justice Burke's dissent in *Coghill* as support for his argument that the creation of Rule 90.3 was an exercise of legislative power by the courts.[34] But the rationale of the dissent in *Coghill* was fully addressed and rejected by the majority opinion in that case. Further, the Alaska Legislature has on multiple occasions since our 1992 holding in *Coghill* ratified the court's child support enforcement powers. For example, the legislature has amended Rule 90.3 a number of times since 1995, including most recently in 2004.[35] Each time, the legislature

27. Moreover, a non-custodial parent is always free to request that confidential financial records such as tax returns be placed in a confidential envelope in the court file and withheld from the public record.

28. *Coghill,* 836 P.2d at 927.

29. *Id.*

30. *Id.* (citations omitted); AS 25.24.160(a)(1).

31. Ch. 126, § 1, SLA 1997.

32. *Koss v. Koss,* 981 P.2d 106, 108 & n. 13 (Alaska 1999) (discussing how the Child Support Enforcement Division (CSED) supplements "judicial powers of enforcement"); *see also*

*Anderson v. Anderson,* 736 P.2d 320, 323 n. 2 (Alaska 1987).

33. *See Anderson,* 736 P.2d at 323 n. 2 (quoting language from ch. 126, § 1, SLA 1977).

34. *See Coghill,* 836 P.2d at 930 (Burke, J., dissenting).

35. The 1995 amendment to AS 25.27.166(d) amends Rule 90.3 by allowing retroactive modification of child support arrearage under certain circumstances. *See* Alaska Civil Rule 90.3 note. The 1996 amendment to AS 25.27.195 amends the rule by allowing CSED to retroactively modify an obligor's arrearages when an order is vacated because it was not based on an obligor's ability to pay. *See id.* The 1997 amendment to

had the ability to alter or supersede provisions of Rule 90.3 via legislation, but at no point did the legislature question this court's ability to order child support. Additional statutory authority for court-ordered child support is evidenced in AS 25.27.060,[36] AS 25.27.070,[37] and AS 25.27.080.[38] Lee presents no basis for us to overrule our previous holding in *Coghill* that Rule 90.3 does not violate separation of powers.

## V. CONCLUSION

Because Rule 90.3 is constitutional and Lee has failed to provide any evidence or arguments that warrant reconsideration of our established precedent, we AFFIRM the superior court's order in its entirety.

---

AS 25.24.170(b) amended Civil Rule 90.3 by altering the standard for certain modifications of a support order. *See id.* Support may be modified without a showing of a material change in circumstances as necessary to comply with federal law. The 2000 amendment to AS 25.20.050 amends the rule by requiring the court to issue a temporary child support order in a paternity action where there is a showing of paternity by clear and convincing evidence. *See id.* In 2004 several amendments were made to the child support statutes, including a provision altering the grounds for modifying a support order. *See id.*

**36.** AS 25.27.060, entitled "Order of support," details when an order for child support may be issued by a court and what a court should consider when issuing such an order.

**37.** AS 25.27.070, entitled "Order to assign wages for support," authorizes a court on its own motion or the motion of either party to assign a portion of the salary of either parent in order to pay the amount ordered by the court for support.

**38.** AS 25.27.080, entitled "Enforcement of support orders," authorizes the child support enforcement agency to "take all necessary action permitted by law to enforce the child support orders so entered, including petitioning the court for orders to aid in the enforcement of child support."